Charles Schweinler died, resident in New Jersey, November 9th, 1927, aged seventy-three, leaving a will, duly probated, whereby he gave all his estate to his wife, Josephine, and named her executrix. His estate, at his death, was insolvent. He had been for some twenty years the owner of two thousand four hundred and ninety-eight shares of stock of the Charles Schweinler Press. About one year before his death he transferred all but one of these shares to and among his wife and his four children, the two thousand four hundred and ninety-seven shares so transferred having a value of over $3,000,000.
It is these transfers which are in issue on this appeal. Did the comptroller (now the commissioner), err in finding that they were made in contemplation of death. Did he err in finding that they were made to take effect in possession or enjoyment at or after his death? These are the two questions presented for determination. Unless both are determined in favor of appellant, the tax must be affirmed. The burden of proof is on appellant.
Several other grounds of appeal were specified in the petition, but are not mentioned in the briefs of appellant — (there was no oral argument) — and hence are deemed abandoned. *Page 69 
The statute under which the tax was assessed, is P.L. 1909ch. 228, as amended. See Cum. Supp. Comp. Stat. 1930 p. 1829. The portion thereof involved in this appeal is section 1, which provides that a transfer inheritance tax shall be imposed in certain cases, including, in addition to testamentary and intestate transfers, the following — (sub-section "third") —
"When the transfer is of property made by a resident, * * * by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death. Every transfer by deed, grant, bargain, sale or gift, made within two years prior to the death of the grantor, vendor or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, shall, in the absence of proof to the contrary, be deemed to have been made in contemplation of death within the meaning of this section."
The principal dispute arises from appellant's contention that "contemplation of death," under this statute means a contemplation of death as likely to occur in the reasonably near or not distant future; that unless the decedent had, at the time of making the gift, a belief or apprehension of death as likely so to occur, the gift is not taxable. Appellant also contends that decedent, under the facts, had no such apprehension or belief; and that the making of the gift was not caused by any
contemplation of death, in whatever way that term be interpreted; and that the gift was not one intended to take effect in possession or enjoyment after the donor's death.
 I. First, as to what is meant by the statutory specification of a gift or transfer "intended to take effect in possession or enjoyment at or after the death" of the donor or transferor.
It was determined in In re Honeyman, 98 N.J. Eq. 638;129 Atl. Rep. 393; affirmed, 4 N.J. Mis. R. 99; 131 Atl. *Page 70 Rep. 924; affirmed, sub. nom. Bugbee v. Board of Missions,c., 103 N.J. Law 173; 134 Atl. Rep. 915, that:
"Where a transfer is made, immediate as to title and possession, it is not taxable unless there is some condition, reservation or provision by which some interest in, or indentifiably tied up with, the very thing transferred, is reserved from the donee until the donor's death."
Conversely (see the cases cited in the Honeyman opinion) if there be some such condition, reservation or provision, the transfer is taxable.
It is doubtless true, that under the facts of the present case as they appear in the record, no tax could be assessed on the gift in question, under this clause of the statute, alone. There is no proof of the requisite condition or reservation; notwithstanding that there is room for suspicion that there may have been some agreement or understanding on the part of the donees or some of them, that the donor would continue to receive his salary and be permitted to draw additional amounts, as before, from the company's funds.
It may be noted here, however (as will also be considered later), that facts concerning an agreement or understanding whereby the maker of a present, absolute transfer is to receive some income, payment or maintenance for his life, which may be insufficient to establish the taxability of the transfer as one to take effect after death, may nevertheless be relevant and material in determining whether or not the transfer is taxable as one made in contemplation of death. The fact that the transferor requires, or relies upon, provision for some payment or maintenance for himself during the rest of his life, is certainly evidential on the question as to whether the transfer was made with the intent and purpose of its taking the place of a transfer at death. The Bottomley case, 92 N.J. Eq. 202;111 Atl. Rep. 605, well illustrates this point.
Transfers made in the same form and method as those which were held not taxable in the Honeyman case, may well be taxable under the contemplation of death clause, if the requisite facts pertinent to that issue can be proven. *Page 71 
In the Honeyman case such proofs were evidently not available, for the respondent admitted that the transfers were not taxable under the contemplation of death clause, and the case was considered only in its aspect in relation to the other clause. This latter is true in a number of other cases, such as thePerry and Brockett cases, infra, the Russell case,104 N.J. Eq. 478; 146 Atl. Rep. 361, and the Schlegel case,111 N.J. Eq. 324; 162 Atl. Rep. 651, and the opinions in all such cases should be considered with that in mind.
 II. Second, as to what is meant by the statutory specification of a gift or transfer "made in contemplation of the death" of the donor or transferor.
At least three different definitions or limitations of the scope of this phrase have been made by the courts of various states in which similar or kindred statutes are in force.
One is, that it means a gift causa mortis, and nothing more: a gift made by a donor who then and there contemplates his death as imminent and inevitable — in the belief that he is actually in the inescapable grasp of approaching death.
Another is that it means (in addition to the foregoing) a gift made when, while, and because, the donor contemplates his death, either as an occurrence which will probably happen in the reasonably near future, or (at most) as an occurrence which may well be apprehended as not unlikely to happen in the not distant future (as, for example, in the case of a man who has had an apoplectic stroke or who knows or believes that he has heart disease); that the scope of the phrase extends no further than that.
A third is, that it is meant to include (in addition to both the foregoing) every gift made when, while, and because, the donor contemplates his death as a thing certain to occur eventually (although not reasonably to be apprehended before the somewhat distantly indefinite future) and therefore makes the gift in substitution for an eventual testamentary or intestate transfer. *Page 72 
At the present day the view is quite general that the interpretation of the phrase is not limited to the first meaning above set forth. At any rate, such is the law in this state. Appellant indeed so concedes — but contends that the true interpretation of the statute goes no farther than the second meaning above set forth.
It should also be mentioned that while it is conceded that it must appear that the "contemplation of death" was an operating cause for the making of any transfer sought to be taxed on that ground, there is some difference of opinion as to whether it must appear that such was the sole cause, or whether it is sufficient if it appear that it was a cause without which the transfer would not have been made.
It is the view of this court that the legislative meaning and intent was that thirdly hereinbefore stated; that the legislature intended to, and did, make subject to this tax (in addition to transfers of title and transfers of possession or enjoyment taking place at death), all transfers purposed and intended to take the place of transfers at death — all transfers by which the transferor sought to accomplish as nearly as practicable the same (or similar) results as in the case of testamentary or intestate transfers (to wit, the transfer, to the persons who would be his testamentary beneficiaries if he should then and there make a will in the expectation that it would take effect almost immediately, of so much of the transferor's property as he felt he no longer needed to retain or at least could get along sufficiently well without for the rest of his probable duration of life): that every transfer made with, and as the result of, the intent and purpose that it be in the place and stead of, or in substitution for, a testamentary disposition or an intestate succession, is taxable under the act.
The first enactment of a statute for the taxation of transfers at death was in 1892. That act (P.L. 1892 ch. 122), included with testamentary and intestate transfers, as subjects of taxation, transfers inter vivos "made or intended to take effect in possession or enjoyment after the death" of the transferor — but made no mention of transfers "in contemplation *Page 73 
of the death of the transferor." Testamentary and intestate transfers took effect at death; but pretty much the same practical result could be attained by a present transfer of future enjoyment — such as a conveyance reserving a life interest to the grantor — (if the grantor was willing to forego the further right of intermediate absolute disposition of the principal). Hence the inclusion of such transfers with the testamentary and intestate transfers.
The broad plan or design of the legislature in enacting the original taxing statute was to tax the ultimate transfer of a man's property from himself to his beneficiaries or successors when he could no longer keep it himself — transfers of the type at that time accomplished usually by will or intestate succession, but sometimes by deed of conveyance reserving to the donor an estate for life. See In re Bottomley, 92 N.J. Eq. 202
(at p. 208, top); 111 Atl. Rep. 605. Transfers of the type or class "made in contemplation of death" were either overlooked by the legislature, or deemed insufficient in number or importance to make it advisable to include them as subject to the tax. The enactment of that statute, however (and similar statutes in other states), created a powerful incentive — the desire to avoid that tax — to the making of transfers of that kind. (As to the tremendous volume and importance to which they have subsequently grown, see the facts in that behalf set forth in the dissenting opinion of Mr. Justice Stone in Heiner v. Donnan,285 U.S. 312.)
Fourteen years after the adoption of the original statute, the legislature (by P.L. 1906 ch. 228), added transfers "made in contemplation of death" to the transfers theretofore already taxable under the statute. The adoption of this change was for no other conceivable purpose or object than to avoid and prevent the loss of transfer taxes by the state in the case of those transfers which were (from the viewpoint of the tax plan of the legislature) essentially of the same type of ultimate transfer as those which took place at death, but which did not come within the scope of the statute as originally enacted — to wit, transfers made while the owner was still alive, and which were completely and immediately *Page 74 
operative and effective, but which were made for the purpose of accomplishing (as nearly as might be in that way accomplished) the same kind or type of transfers which was accomplished in the case of a transfer by will.
It has never been doubted (nor is it now denied by appellant), that the legislative purpose and intent in adding or including transfers "made in contemplation of death" as subjects of taxation, was that just stated — that it was to prevent the tax, on those ultimate transfers which prior to the inception of these taxing statutes had been ordinarily and usually accomplished by will or intestate succession, from being avoided by transfersinter vivos — to subject to the tax all transfers made for the purpose of accomplishing the transfer of a man's property to those whom he desired to own and/or enjoy it after his death. SeeIn re Honeyman, supra (at p. 208); In re Perry, 111 N.J. Eq. 176
(at pp. 181, 182); 162 Atl. Rep. 146; In re Brockett,111 N.J. Eq. 183 (at p. 187); 162 Atl. Rep. 150. Chief-Justice Hughes says, in United States v. Wells, 283 U.S. 102 (at pp.116, 117), in speaking of a similar statute — "Transfers in contemplation of death are included within the same category, for purposes of taxation, with transfers intended to take effect at or after the death of the transferor. The dominant purpose is toreach substitutes for testamentary dispositions and thus toprevent the evasion of the * * * tax." (Italics mine.) The same or similar statement will be found also in Nichols v.Coolidge, 274 U.S. 531 (at p. 542); Milliken v. UnitedStates, 283 U.S. 15; and was again made in Heiner v. Donnan,supra.
There being no doubt as to the legislative purpose and intent, the intent and meaning to be accorded to the phrase, "gifts made in contemplation of the death of the donor," must therefore, if possible, be that which is in accordance with, and will give effect to, that legislative object and purpose. It is entirely possible, and therefore entirely necessary, to interpret the phrase in just that way — to interpret it as meaning those gifts made as the result of the donor's contemplation of his death and for the purpose of accomplishing *Page 75 
thereby, in the place and stead of such transfer as would otherwise be accomplished at his death by testamentary gift or intestate succession, a transfer of the same general type or nature as that which is accomplished by testamentary gift,i.e., a transfer of his property (or a material part of it), after he has finished with it, to that person or those persons whom he desires to have succeed himself in the ownership and enjoyment thereof. That meaning may be, and frequently has been, more briefly expressed as "a transfer or gift intended in the place and stead of a testamentary disposition."
It is entirely possible to interpret the legislative phrase as having that meaning, for the legislative phrase itself is completely general and all-inclusive — literally it includes not only transfers of this kind, but all other transfers in the making of which the donor has in anywise given any consideration to the thought of his death. The meaning and interpretation just mentioned is not a broadening or extending of the legislative language, but a narrowing or limitation thereof.
It is proper so to interpret it, because it is obvious from consideration of the legislative purpose, and of the nature of the other subjects of taxation with which it is associated in the legislative enactment — noscitur a sociis — and the general rule of strict interpretation of a taxing statute — that the legislature did not intend the phrase in its broadest, literal meaning: that it intended it only as including those transfersinter vivos of the same general character or type as transfers at death. Obviously the legislature had no intent or purpose to tax transfers for adequate valuable consideration resulting in no diminution of the value of the transferor's estate, even if made solely because the transferor believed that his death was very close at hand and desired to liquidate his affairs before he died (although literally such a transfer would come within the statute), nor gifts made solely for purposes, and from motives, in which the contemplation of the donor's death played no causative part, notwithstanding that such contemplation in fact took place.
On the other hand, the principle of strict interpretation of taxing statutes in nowise necessitates nor justifies the narrowing *Page 76 
or limitation of the express legislative language to any greater extent than that which is necessarily or naturally to be implied from consideration of the legislative language in relation to the legislative purpose. If a class of transfers comes within the scope of the legislative language and is also clearly within the legislative purpose, there can be no rational ground nor legal justification for a judicial interpretation excluding that class from the operation of the statute.
The statute specifies transfers made in contemplation of death — it does not say in contemplation of "imminent" death, or in contemplation of death "as likely to occur in the reasonably near (or not distant) future," or anything at all of that kind; nor does it say anything to indicate that its purpose could or should be understood as so limited. If it had had such intent it would have been simple and easy, and the natural thing, for it to have said so. The natural presumption from the absence of any such words is that it intended that there should be no such limitation.
The correctness of that presumption is established beyond doubt by consideration of the legislative purpose and object (hereinbefore adverted to) in enacting the amendment of 1906. Since that purpose and object was to prevent loss of revenue to the state by reason of transfers inter vivos made in the place of transfers at death, there can be no reason to believe that, in making those transfers subject to tax under the name of "transfers made in contemplation of death," the legislature meant to include only such of them as involved a contemplation of death in the near future. There is every reason to believe that it hadno intent of any such limitation.
It seems clear that a judicial conclusion establishing such a limitation can only be reached by omitting any and all consideration of the plain and undisputed purpose of the enactment. For the court to say, "yes, we know that the legislature wished to include all transfers intended as substitutes for testamentary dispositions, and we admit that the general phrase used by the legislature is perfectly susceptible of the meaning which will accomplish that desire and purpose, but it is also susceptible of another meaning which will *Page 77 
accomplish only a portion of that desire and purpose, and therefore we believe, and will rule, that it is in the latter sense that it was used by the legislature," would reflect scant credit, it would seem, on the logic or intelligence of either the judicial or the law-making body.
The lack of rational basis for a determination in favor of such a limitation as that for which appellant contends, is readily apparent if one asks where the line is to be drawn? and why?
Suppose a man of sixty, a widower, giving thought to himself and his estate, reflects as follows: "It is certain that I will die, though the exact time is uncertain. I feel reasonably sure that I will live six months longer, but I'm afraid I can't expect to live any longer than that. When I die I want my children to have my estate. I can get along sufficiently well for the rest of my life on half my estate. I will give my children the other half now, instead of making them wait for it until my death" — and accordingly he does so. Suppose twenty other men, all precisely similarly circumstanced, all make the same gift after going through exactly the same mental process with the single exception of the several substitutions of the several numbers of years from one to twenty, in the place of the "six months." Which of the twenty-one gifts would be taxable, and which not? At what year is the line to be drawn, and just why should the gift on one side of that line be taxable and the one on the other side be not taxable?
If a man's contemplation be thus: "My doctors have told me that I probably have only about one year more to live; and I believe them. That being so, there is no reason why I should not give the bulk of my assets to my children now, instead of their waiting until my death. I will do so" — and if he therefore makes the gift, it would be a gift taxable under the statute as being made in contemplation of death. Appellant so concedes; and almost all courts would so hold. His contemplation of death was the impelling cause or motive for the gift.
Suppose, however, his contemplation be thus: "I'm getting *Page 78 
on in years, I'm over seventy. I come of a long-lived family, and it's quite possible that I may live for ten or fifteen years longer. Still, I may not last that long, and it is certain that I'm going to die eventually, and when I do, my property will go to my children. I want them to have it. I would be glad for them to have it, or at least some of it, now. I would give it to them now, if I could be sure I'd have enough to take care of myself properly for the rest of my life. Well, I can be sure of that — I'll give them two-thirds and keep one-third — that will be enough" — and he therefore makes the gift. His contemplation of death was just as surely the impelling cause or motive for the gift in this instance as in the other. The gift comes as squarely within the language of the statute in this instance as in the other, and the gift is of the nature or type which it was the legislature's general object or design to tax — the transfer of a man's property, when he was through with it, to his successors or other chosen beneficiaries — just as surely as in the other instance.
Upon what rational ground then can it be said that the gift in the first instance is taxable, but the gift in the second instance is not?
It may be added that the conclusion herein reached as to the meaning of the phrase, is not dependent on the fact that gifts in contemplation of death were added to the statute by a separate and subsequent enactment. That fact makes the legislative purpose and intent stand out in clear relief; but the same result would necessarily be reached if those gifts had been originally included with the others, all together in the one statute. It would still be clear from the legislative object, and from a consideration of the association (as subjects of taxation) of gifts in contemplation of death, and gifts intended to take effect at death, with testamentary and intestate transfers, that the legislative purpose in taxing these two classes of gifts was to reach substitutes for testamentary disposition. The statements in that behalf (hereinbefore referred to) made in the United States supreme court cases, were made in reference to a statute which included all four classes. *Page 79 
The enactment of the amendment of 1922 (P.L. 1922 ch. 174), by which there was added to the statute, the second sentence of that portion of the statute quoted at the commencement of this opinion, made no change either expressly or by implication in the meaning or intent of the statute with respect to gifts made in contemplation of death. That sentence simply "lays down a rule of evidence for the trial of the issue" as to whether or not the gift was made under the specified circumstances. In re Sacks,infra (at p. 712).
Since the legislative purpose was to reach substitutes for testamentary dispositions, it is clear that in imposing a tax on "gifts made in contemplation of the donor's death" it means those gifts which are made as the result of that contemplation of death which results in testamentary dispositions. That contemplation of death may result in one of four things — the making of a will; the deliberate resolve to let the laws of intestacy operate; the making of a present gift to take effect at death; the making of a present gift, presently effective. All four of these things —everything that can result from that kind of a contemplation of death — the statute makes taxable. Obviously it is that kind of contemplation of death which the legislature means, in its characterization of present gifts presently effective.
That contemplation of death which results in testamentary disposition is so well known as scarcely to need definition or description. It is a man's considered reflection that death is certain to come eventually, even though not anticipated as likely to occur until a distant time; that when death does come he can no longer protect, support or benefit those who are near and dear to him or to whom he owes some duty in that behalf, and he will then have no further possibility of making any gifts for public or charitable purposes; that when death does come his estate will inevitably pass to someone else; that it would be a wise and provident thing for him now, before death does come and prevent any such action on his part, to make provision for the passing of his estate to those whom he desires to have and enjoy it after his death and to make provision for the support, protection or benefit of *Page 80 
those for whose support, protection or benefit he wishes to provide — with, of course, further consideration as to beneficiaries, and nature and amounts of testamentary gifts.
That contemplation is more likely to take place (as a matter of human nature) when one reaches advancing years or is confronted with the apprehension of early death — but it may take place atany age (at least after maturity) and under any circumstances. It may (and frequently does) take place, repeatedly, without result; or it may have result in any one of the four ways hereinbefore mentioned. It is more likely to have such result at advanced age or in apprehension of early death, but it may have such result at any age. Obviously, from the legislative purpose, the legislature was in nowise concerned with any question ofwhen that contemplation and resultant action takes place or why it took place at the time it did take place; it is concerned only to see that whenever that contemplation does take place and
effectuates the making of a presently effective gift in the place of a testamentary disposition, that gift shall be taxed.
No further or other contemplation of death is requisite under the statute than that contemplation which results in testamentary disposition. But it is requisite under the statute that the gift (to be taxable) shall have resulted from, or have been causedby, that contemplation of death. The statutory language taxes those gifts made "in" contemplation of death. As has heretofore been shown, it is clear from the legislative purpose, that it was not intended by that language to tax gifts which were not the result of that contemplation of death.
A gift may be made as the result of that contemplation of death; or it may be made in nowise as the result of that contemplation of death or any contemplation of death, notwithstanding the donor may in fact have had the contemplation of death and notwithstanding the effect of the gift in fact diminishes the estate of the donor passing at his death. And either one of these occurrences may take place at any age or at any number of years prior to the donor's death. *Page 81 
For instance it is quite possible and readily conceivable that a man of modest means, well over seventy years of age and knowing that he has heart trouble, might make a gift of half or all his assets to a grown son stricken by disease or accident, for the purpose of giving him the expensive treatment necessary to save his life — with no purpose or thought whatever of the gift being in substitution for a testamentary bequest. In such a case the gift would not be taxable, even though the donor died the next day — any more than it would have been taxable if the donor had been forty years old and lived for thirty years thereafter.
On the other hand it is also quite possible to conceive of a man of means, in early life, giving a quarter or half his estate to his wife for the very expressed and avowed purpose of anticipating a transfer to her which would otherwise take place at his death and of thereby avoiding a tax on a testamentary transfer. And in such a case the gift would be taxable, notwithstanding the donor was in sound health and lived thirty years thereafter, just as clearly as it would be taxable if he had been seventy-five years old and had died a day or two later.
A gift is taxable, under the legislative purpose and statutory expression and intent, if it is made as the result of that contemplation of death which leads to testamentary disposition; a gift not made as the result of such contemplation is not taxable. It is immaterial, on the legal issue of taxability, when the gift is made or what other circumstances attend or surround the making; but of course the facts as to those other circumstances may well be of great materiality and importance in the endeavor to determine the fact as to whether or not the gift was made as the result of that contemplation of death.
The determination of that fact is indeed usually ascertainable only by consideration of such attendant facts and circumstances, in connection with the common knowledge of the usual mental processes of the normal human being. A man's actual mental processes are not, and cannot be made, a matter of record, nor are they susceptible of direct perception *Page 82 
by the senses of others. His own statements (verbal or written), in regard thereto cannot be relied upon as an accurate record of his actual mental processes (Cf. In re Grabfelder,107 N.J. Law 520; 153 Atl. Rep. 532), especially if there be ground for suspicion that he was trying to conceal or deceive in respect thereto. Normal and rationally probable inferences from his acts and his attendant circumstances are a much more dependable guide.
As a matter of common knowledge, most men do not divest themselves of their whole estates or a large proportion thereof, except as the result of that contemplation of death already discussed. When such a gift is made, therefore, it is more probable than not that it was made as the result of such contemplation. Such contemplation and such result is much more likely to take place when the donor realizes that death is approaching nearer, than in the absence of such realization. Hence when such a gift (of the whole, or a large part, of his estate), is made by a person in advanced years, or knowing himself to have a serious condition of health, the probability that the gift was made as the result of that contemplation is very greatly increased — so greatly increased indeed as to lead the normal mind to the conclusion, in the absence of evidence that the gift resulted from some other cause, that the requisite fact is thereby established. (This was given legislative recognition and expression in the amendment of 1922.)
Since these facts — the gift being of the whole or a large part of the donor's estate; advanced age of the donor; serious ill health of the donor — are such important and weighty pieces of evidence, and since both the first and either or both of the other two usually appear in these cases (for the reason that the state would seldom contend that a gift of less than a material part of the donor's estate had been caused by the contemplation of death, and the reason that most men do not bring themselves to the point of presently divesting themselves of a large proportion of their estates unless and until their contemplation of death and its results has been intensified by advanced years or ill health or both) they are naturally singled out and commented upon by the courts in dealing *Page 83 
with such cases; and it is deemed that much confusion of thought has resulted therefrom.
Clearly, however, these facts are important only as evidence. Their existence is not required by the statutes; nor are they either requisite and necessary (on the one hand), nor conclusive (on the other hand), in establishing the fact which is required by the statute. Notwithstanding the existence of those facts, it is possible that the gift was not caused by the contemplation of death; and notwithstanding the absence of proof of those facts or indeed the absence of those facts themselves, it is possible (as has already been pointed out) that the gift was caused by the contemplation of death. It is not true that those circumstances are the only means of proving that fact — any more than it is true that the existence of a premeditated intent to kill can be proven only in a case where the killer quarreled with his victim, left the scene of the quarrel, went to procure a weapon and returned an hour or two later with the weapon and committed the homicide.
The requisite statutory fact, notwithstanding the absence of illness or advanced age, might be proved in some instances by proof of admission or avowal by the donor; it would also be proven in the case of a man who made a presently operative deed of trust containing elaborate provision for the benefit of himself and of his beneficiaries after his death. (Cf. theKunhardt case, 4 N.J. Mis. R. 692), and it is deemed that a finding of the existence of the requisite statutory fact would be justified in a case where it appeared that a donor, neither aged nor in ill health, having no close relatives or dependents, and being religious in character, made a transfer of the greater part of his large estate to a church or missionary organization in consideration of the donee obligating itself to pay him during his life an annual sum in the neighborhood of the annual income reasonably to be expected from the estate transferred. Cf. theHoneyman case, infra, where the issue as to the gift being in contemplation of death was not involved or considered; also theBottomley case, infra.
Assuredly it is not true that it is not possible for a man who is in sound health and not of advanced age to have that *Page 84 
contemplation of death which leads to testamentary disposition, and to make a gift because and as the result of that contemplation. No matter how many years a man may expect to live, he knows he may die tomorrow, and he may be moved thereby to make a present gift. Such instances doubtless are comparatively infrequent, but they can and do take place. The legislature had no reason or intent to absolve them from the tax.
The view that the statute means to tax all transfers made in lieu of a testamentary disposition (with of course the proviso, not there expressed because not there in issue, that they be madebecause of that contemplation of death necessarily involved in the making of a transfer in lieu of a testamentary disposition) was expressed by this court in In re Bottomley, 92 N.J. Eq. 202;111 Atl. Rep. 605, see page 208, first paragraph; page 207, last paragraph, and compare also the second paragraph of the court's syllabus. The same principle was reiterated and applied by this court in the recent but unreported case of the Estate of ChestonSimmons, and very similar views were expressed in In Re Perry,111 N.J. Eq. 176 (at pp. 181, 182); 162 Atl. Rep. 146, and in In re Brockett, 111 N.J. Eq. 183 (at p. 187);162 Atl. Rep. 150. The denial of the limitation now contended for by appellant is a corollary of the principle set forth in theBottomley case.
It is true that in the Bottomley case there was no express
denial of the limitation now contended for by appellant; and it is also true that, by reason of some of the facts which appeared in that case, the affirmance of the tax herein did not operate as a legal adjudication denying such limitation; and hence appellant's present contention is not for a reversal of that determination, but for a modification and amendment of the principles therein expressed.
Appellant refers to the statement in the Bottomley opinion (p. 207), that it probably would not be contended that a gift made by a man of twenty-five, in good health, contemporaneously with the making of his will would be taxable under the statute — and argues that thereby is indicated or *Page 85 
implied the limitation for which he now contends. No such limitation was intended. A gift made under those circumstanceswithout more, would not be taxable. It is requisite that the making of the gift be caused by the contemplation of death, with the purpose of its being in the place of a testamentary disposition, and it might well be doubted that the inference (as to the probability that such was the fact) to be drawn fromthose circumstances alone, would be sufficiently strong to lead a jury or other trier of fact to conclude that that fact had been established. But if other facts and circumstances appeared which greatly increased the probability that the gift was the result of that contemplation — such as that the gift was of half or more of the donor's estate, and that he had received back a legal obligation to pay him a life annuity in the neighborhood of the normal income which might be expected from the amount of the gift — the requisite statutory character of the gift might well, and probably would, be deemed to have been established. If it be established as a fact that the gift was made as the result of that contemplation of death which leads to testamentary disposition, the gift is taxable no matter how young the donor's age, or how sound his health.
Appellant relies on the decision of this court, In re Sacks,101 N.J. Eq. 709; 139 Atl. Rep. 53; but assuredly nothing therein expressed or implied is at variance with the principles set forth in the Bottomley case and in the instant case. In theSacks case the court found that the donor, though over seventy, had no apprehension of early death, but believed he would live a long time, and the court said (italics mine) — "Gifts under such circumstances, without more, are not made in contemplation of death, within the meaning of the statute. A tax levy is not justifiable unless death be apprehended or the gift is inanticipation of that event."
There is no question but that this is so. A gift is not taxable under the statute if the controlling motive be not the intent to substitute the gift for a transfer at death; and the existence of that intent, as the controlling motive for the *Page 86 
gift, is not established — even under the "presumption" clause of the statute — by the mere fact that the donor was past the age of seventy years, nor even by the additional fact that he died within two years thereafter (although both of those facts are of evidential materiality and weight). It must also appear that the gift was of a material part of the donor's estate, or was in the nature of a final disposition or distribution of his estate; and, if there be evidence tending toward the conclusion that the donor was not actuated in the making of the gift by the intent and purpose that it should take the place of a transfer at death, the evidence tending to establish the contrary conclusion must be found sufficiently strong either to outweigh it — or at least to counter-balance it. Cf. Kunhardt v. Bugbee, 3 N.J. Mis. R.1107 (at p. 1110, top); S.C. 4 N.J. Mis. R. 692 (at p.693), last paragraph and p. 696, end.
In the Sacks case, the court upon consideration of all the facts and circumstances in the case, found that the controlling motive for the gift in that case was the donor's aim "to see, in his own lifetime, his son well established and worthy;" that the evidence completely disproved the contention that the gift was made from an intent to substitute it in the place of a testamenary transfer and the contention that there was any purpose to avoid the tax on a transfer at death. The determination was a determination of the fact, and justifies no inference that a different principle of law was intended to be set forth.
(Of course it is in nowise necessary or essential to the taxability of a gift, under either clause of the statute, that there be proof that the donor had any intent to evade or avoid the tax — Moore v. Bugbee, 3 N.J. Mis. R. 435 (at p. 436);128 Atl. Rep. 679; Kunhardt v. Bugbee, 3 N.J. Mis. R. 1107
(at p. 1110); 130 Atl. Rep. 660. The thing which is necessary and essential (under the "contemplation clause"), is a considered and intended purpose by the donor that the benefaction or transfer to the donee should not be postponed until the donor's death, but should instead thereof take place at once. A donor may make a gift with that purpose *Page 87 
and intent, either with or without an intent to avoid a tax. Proof that he did have intent to avoid the tax would be strongly, if not conclusively, evidential of a contemplated purpose that the gift should take the place of a transfer at death; but neither the absence of such proof, nor proof of the absence of intent to avoid the tax, would be evidential that he did not have the contemplated purpose that the gift should take the place of a transfer at death.)
It is the opinion of this court, therefore, that the taxability of transfers made in contemplation of death is not limited to those instances in which the contemplation is of death in the reasonably near or not distant future; is not limited in any wise by the probable time of that death as contemplated by the donor; is not defeated by the mere fact that that contemplation is of death in the wholly indefinite, though eventually certain, future.
The view taken by this state, as to the interpretation to be given the phrase in question, has also been expressed, interalia, by the supreme court of the United States. In the recent case of United States v. Wells, supra, that court discusses what constitutes a transfer made in contemplation of death, within the meaning of a statute similar in its terms, and says (speaking through Chief-Justice Hughes):
"The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the * * * tax. * * * The motive which induces the transfer must be of the sort which leads to testamentary disposition. * * * It cannot be said that the determinant motive is lacking merely because of the absence of a consciousness that death is imminent. * * * The statute is not to be limited and its purpose thwarted by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is near at hand."
It expressly rejects as erroneous the view that it is requisite "that there be a condition `creating a reasonable fear that death is near at hand' and that `such reasonable fear or apprehension' must be `the only cause of the transfer.'" (Italicsnot mine.) *Page 88 
And says: "It is sufficient if contemplation of death be the inducing cause of the transfer, whether or not death is believedto be near." (Italics mine.)
With respect to the decisions by courts of other jurisdictions, cited by appellant — to the effect that "contemplation of death" is to be construed as meaning "contemplation of death as reasonably near" (or to the like effect) — it need only be said that this court finds it impossible to concur in either the reasoning or the result thereof.
Appellant argues that inasmuch as there have been a number of such decisions in other states, and the legislature of this state has adopted no amendment contrary to those decisions, it must be deemed that the legislature did not intend that the law of this state should be other than in accordance with those decisions. Not so. The conclusion to be drawn from the silence of the legislature is quite the opposite. The judicial interpretation of the meaning of that phrase made in this state in theBottomley case, supra, in 1920, was (as has hereinbefore been mentioned) to the effect that the meaning of that phrase was not so limited. The legislature, with that knowledge, has made no change, in this behalf — although it has enacted a number of amendments to the statute during the past fourteen years. The implication is of course that it deemed no such change necessary or desirable.
Appellant argues that the legislature could not have meant that gifts made in "contemplation of death" should include all gifts made in substitution for a testamentary disposition, because of the addition of gifts "intended to take effect * * * after death;" that such addition would have been unnecessary and superfluous, because all gifts "intended to take effect after death" would assuredly be gifts made in substitution for testamentary disposition and therefore included under the "contemplation of death" provision. This argument overlooks the fact that (as hereinbefore shown) the provision as to gifts "intended to take effect after death" was first enacted, and the provision as to gifts "in contemplation of death" was addedlater, so as to include those gifts made in substitution for testamentary disposition which did *Page 89 
not come within the scope of the provision as to gifts "intended to take effect after death."
Moreover, it is by no means evident that the legislature could have felt sure that all "gifts intended to take effect in possession or enjoyment after the donor's death" would be included in "gifts made in [because of] contemplation of the donor's death." It was contended in the Kunhardt case, supra, that the transfer there sub judice was not made in lieu of a testamentary disposition; and it seems quite conceivable that a transfer intended to take effect in possession or enjoyment after the donor's death might be made solely as the result of a promise to the person from whom the donor acquired the property by gift or inheritance — and not as the result of that contemplation of death which leads to testamentary disposition. The legislature, in adding the "contemplation of death clause," was extending the scope of the statute; it would have felt no inclination to take any risk of excluding anything already made taxable.
Appellant further argues that every gift of a material part of the donor's estate and every gift in the nature of a final disposition or distribution of his entire estate, is in fact in the place and stead of a testamentary disposition; and that the legislature could not have meant that all gifts in the place and stead of a testamentary transfer are to be included within the phrase "contemplation of death," because it expressly contemplates, in the "presumption" clause, that proof may bemade to the contrary — ("in the absence of proof to the contrary").
That argument is sound — but it in nowise tends to prove that the legislature intended to limit "contemplation of death" to contemplation of death "as reasonably near." The legislature did not intend to tax all gifts of a material portion of the donor's estate; it did not intend to tax any of such gifts for the making of which the impelling or controlling cause was not the intentand design to make a gift which should take the place of a testamentary gift. It did not intend to tax a gift for which the impelling and controlling cause was something other than that intent and *Page 90 
design — such as the gift to save the life of a son, in the hypothetical case, supra — even though the effect in fact of such a gift would be to supplant a testamentary disposition. Itdid intend to tax those gifts which are made with the intentand purpose that they take the place of testamentary disposition — irrespective of the donor's belief as to the probable nearness or distance of his death.
Appellant cites what was said in In re Brockett, supra, (atp. 188), with regard to what constitutes a transfer in lieu of testamentary disposition. It has no application to the instant case. What was there said was said solely in reference to a transfer intended to take effect in possession or enjoyment after death; tranfers in contemplation of death were not there involved or considered.
 III. Third, as to whether or not it is necessary that the "contemplation of death" be the sole cause of the transfer. This must be answered in the negative.
The language of the statute neither expresses nor implies any such requirement. It makes a gift taxable if it be made "in" contemplation of death; and, as already shown, it is clear from consideration of the statute and the legislative objects and purposes, that that means if the gift resulted from, or was caused by, that contemplation of death which leads to testamentary disposition. It is sufficient therefore if the gift be one which did result from that cause and would not have been made without that causative factor. No reason is found justifying a limitation of the legislative language by adding a restriction that it must be the sole and only cause or impelling motive.
Of course (as already stated), a gift, the making of which was the result of some cause entirely different from, and other than, that contemplation of death which leads to testamentary disposition — which would have been made entirely irrespective of any such contemplation (such, for instance, as the gift to the son to preserve his life, or a gift *Page 91 
to a hospital to benefit the public in a time of epidemic emergency) — is not taxable, even though it be in fact attended by that contemplation of death. Nevertheless, although this is true, it is not true that the presence of a purpose or expectation by the donee of deriving some pleasure or benefit, himself, as the result of the gift, or even of accomplishing some immediate and particular benefit to the donee other than the mere addition to the donee's wealth, necessarily prevents the gift from being one made as the result of that contemplation of death.
Having in mind the legislative purpose and design, a gift made with the purpose, and from the motive, inter alia, of accomplishing a present transfer in the place and stead of a transfer at death — and which would not have been made in the absence of such purpose and motive — is not to be deemed not taxable merely because the donor also had other motives and purposes present in his mind. The express statutory provision is not to be cut down or limited by implication — by judicial interpretation — to any greater extent than is required as the result of rationally necessary inference; and there is no reason to believe that the legislative intent requires any greater limitation of its language than that already mentioned. Consideration indeed, indicates the contrary.
Since the legislative intent was to tax transfers made for the purpose of accomplishing a transfer in the place of a transfer at death; and since a transfer made as the result of such motive, and which would not have been made in the absence of such motive and purpose, is still a transfer made for that purpose even though there were also other motives and purposes present, tending toward the same result — what reason is there to believe that the legislature intended to exempt or exclude it from taxation?
On the other hand, a determination that such was the legislative meaning would completely nullify the legislative provision by excluding from taxability all gifts "in contemplation of death" — for it is impossible to conceive of anyone making a gift with the intent and purpose that it be in lieu *Page 92 
of a testamentary transfer, without having also present in his mind some additional motives or purposes. No one ever makes a gift for the mere naked purpose of simply making a gift — for the sole purpose of divesting himself of that much of his property. There is necessarily always present — (even in the case of a man who believes that he will die within the near future, and who, concededly, because thereof, and with full deliberation and purpose, transfers his estate to his beneficiaries at once instead of letting that transfer await his death) — the motive and purpose to benefit the donee in some way, perhaps in more than one way — (including, of course, within the term "donee," the ultimate beneficiaries of gifts to charities); there is usually present the motive of pleasing the donee — of increasing the donee's happiness; there are frequently present the motives of affording pleasure, happiness, enjoyment — perhaps even benefit — to the donor himself, and of benefitting and/or pleasing others than the donee — such as the donee's wife or children.
In some of the opinions in other jurisdictions, statements are made expressing or indicating a view that if the donor has a desire to have the enjoyment of seeing the donee's enjoyment of the gift, the gift is therefore not one made in contemplation of death. It is deemed that such a conclusion is entirely unwarranted, and that this, and other expressions of more or less similar nature, probably result from confusion in the use of terms and from lack of sufficiently thorough analysis.
Such words as "motive," "desire," "intent," "purpose," "aim," and "cause" are used more or less indiscriminately as synonymous. They cannot always safely be so used; they are not always and under all circumstances identical in meaning. In a number of the cases, for instance, it is said that the contemplation of death must be the "motive" for the transfer. In the Wells case,supra, the word "motive" is used in this way a number of times — "the controlling motive," "the compelling motive," "the determinative motive," — although in other instances the word "cause" is used — "the impelling cause," "the motivating cause," "the inducing *Page 93 
cause." With all due respect to that court, it is submitted that the word "motive" is unfortunate, in that respect; that that contemplation of death which leads to testamentary disposition is properly to be characterized as "the cause" (or "the
motivating cause," or "the inducing cause") for the making of a gift or the making of a will, but ought not to be characterized as "the motive" therefor.
With no thought or wish of attempting any philosophical or psychological exactitude of definition or nomenclature — the word "motive," in ordinary usage and understanding, connotes asingle mental act or condition, and one which is a desire or wish, or something in the nature of, or akin to, a desire or wish. "Hunger," the desire for food — may well be the motive for the theft of food from a store. "Revenge," — the desire to reciprocate an injury; "fear," — the desire for self-protection; "robbery," — in the sense of the desire to rob; "jealousy," — the desire to be pre-eminent or sole in the regard, affection or society of another: each of these is commonly spoken of as the cause of, or "the motive for," a homicide.
Where only a single desire or motive (in a sense akin to desire) is involved as a causative factor, no confusion arises from the use of the words "the motive" as a designation for the thing which causes the act or result. Not so, however, where the thing which causes the act is something which involves more than one desire or motive (in the sense of desire). In such a case, while doubtless it may be strictly correct to speak of such a composite cause as "the motive" for the act — using the word "motive" in the sense of "cause," — nevertheless, one who reads or hears may well understand the word as connoting desire, and in considering that thing so designated, as constituting "the
desire," be led to exclude from consideration any and all other "desires."
In the case of the gift (hereinbefore spoken of) to save the life of a son, it may well be perfectly sound, for all practical purposes, to characterize that desire to save the son's life as "the motive" for the gift. But that contemplation of death which leads to testamentary disposition (considered *Page 94 
as the possible cause for a gift inter vivos), is assuredly not a single mental act or condition; it is a complex, composite thing which involves and includes more than one single desire; and in addition involves and includes reflective consideration of the several desires which are involved, and of plans or methods by which those several desires may be severally or collectively accomplished, and of the respective advantages and disadvantages which are likely to result from the putting into operation and effect of each, any or all of those plans or methods; it furthermore involves a weighing of those advantages and disadvantages and the formulation of, or arrival at, a deliberate choice between the doing or the not doing of each of two or more alternative acts — each of which acts is frequently complex and involves several desires or motives (in the sense of desires).
The previous description herein of that which constitutes the contemplation of death which results in testamentary disposition, need not be repeated, but should be amplified in considering it as the inducing cause of a gift in lieu of testamentary disposition. The donor's mental process, after (or in connection with) considering his several wishes or desires as to the persons whom he desires to benefit, and the kind and amount of the respective benefactions, considers the proposition of the possibility and advisability of making those benefactions by immediately effective gifts instead of by testamentary gift. He has wishes or desires to give, to them or some of them immediately — wishes and desires to benefit and protect them (by such gifts) after his death; to benefit and aid them immediately, prior to his death; to please them; to derive pleasure and enjoyment himself from their pleasure and enjoyment and from seeing and contemplating the benefit which comes to them, and the manner and results of their use and enjoyment of the benefactions — these and divers other wishes and desires, in varying instances, are passed on in the donor's mind. Also there is the wish and desire that the maintenance and support of himself, shall be amply, or moderately, or at least sufficiently preserved, insured or provided for; and there may be, and often are, other wishes and *Page 95 
desires which would tend to oppose in whole or in part, the making of disposition by present gift instead of by will. All these are considered and weighed — the wishes or "motives" for, and those against, the making of a present gift. Finally, there is a decision that the considerations in favor of the making of some particular benefactions by present gift, outweigh the considerations in favor of the making of the benefactions by will.
Wherever that contemplation of death which leads to testamentary disposition is the inducing cause of an immediately effective gift inter vivos, there has been made a choice
between at least two courses — benefaction by gift, or benefaction by will; and the making of that choice is the result of the consideration of the several wishes or "motives" which would lead to either of the respective results. The contemplation of death is the cause — (or the "motive," used in the sense of "cause") — of the gift; but it is not the "motive" therefor, in the more frequently understood sense of "wish" or "desire;" it is a complex composite mental process involving several or many "motives," in the latter sense.
Hence the fact that the donor is influenced toward the making of the gift by such "motives" or considerations as the desire to benefit the donee — the desire to benefit the donee at present rather than at death — the desire to benefit the donee in some particular respect other than, and beyond, the mere addition to the donee's assets — the desire to relieve himself from business cares, duties or responsibilities or to have a greater amount of leisure and enjoyment — the desire to enjoy, himself, the pleasure of observing the benefit and enjoyment of the gift — does not prevent the gift from having been caused by the contemplation of death.
Where a gift inter vivos is made, if one of the "motives" or wishes which led to the making thereof — one of the purposes sought to be accomplished thereby — is the benefit and/or support of the donees, or the ownership and/or enjoyment by the donees of the subject-matter of the gift, after the death of the donor, and the gift would not have been made without such motive, wish or purpose, then the gift *Page 96 
is made in contemplation of death — it is the result of that contemplation of death which leads to testamentary disposition — no matter how many other motives, wishes or purposes tending toward the making of the gift in praesenti may also have been present in, and influencing, the donor's mind.
Of course, the mental process of the "contemplation of death" need by no means occur in the same order as that hereinbefore described. It is not necessary that the thought or subject of death and the necessity or advisability of ante mortem
preparation for post mortem conditions be the commencement of that mental process. That process may well commence (and doubtless not infrequently does), with the subject or thought of accomplishing a present benefit to the donee. For instance, a man may be considering his son's progress in business, and have the wish to help him toward success by making him a considerable present benefaction, or to turn over to him the ownership and management of the donor's own business so that the donor may have more leisure, relaxation and enjoyment and/or so that the donee may thereby sooner learn and develop the ability to carry it on successfully, especially while the donor is still on hand to give him aid and advice; he may think, "I wish indeed that I could do this thing; I certainly would, if I could do it and still be able to take care of myself and my wife during the rest of my life and provide adequately for my wife after my death; but I don't see how I can do all this latter if I make the gift now. I guess he must wait until my death: of course I want him to have it then and I intend he shall have it then. Let me think, however — there may be some way I can work it out so as to make this gift now instead of at my death and still be able to get along all right for the rest of my life and make adequate provision for my wife after my death;" and he proceeds to devise and decide upon a plan whereby he believes he may accomplish all these desires sufficiently well to enable him to make the benefaction or a substantial part or equivalent thereof, at once — and does so. *Page 97 
In such a case the gift is made as the result of that contemplation of death which leads to testamentary disposition. One of his motives and desires leading to the making of the gift — and one without which the gift would not have been made — was that the son should thereby have the benefit of the subject-matter of the gift after the donor's death: assuredly he would not have made the gift, if a necessary result of that present gift had been that the son would be deprived thereof upon the donor's death. And he made a choice between testamentary gift and present gift, in favor of the latter.
It is deemed beyond question that wherever the donor has made a choice (in favor of the present gift), between benefaction by will and benefaction by present gift, that gift has been caused by that contemplation of death which leads to testamentary disposition — and has therefore been made "in contemplation of the death of the donor." Conversely, if there has been no such choice — (and of course, no choice between present gift and intentional intestacy) — the gift is not made in contemplation of death; except where it is made in such expectation or apprehension of such closely imminent death as to amount actually or practically to a gift causa mortis — where testamentary benefaction may not be consciously considered because of the probable or apparent necessity for immediate donative action (and even in such a case it would seem probable that there would have been a choice between a present gift and intestacy or an old will).
In the gift for the purpose of saving a son's life, or for the purpose of benefitting the public in an epidemic emergency, there is (in all probability) no choice made between benefaction by present gift or benefaction by will. The donor's purpose could not be accomplished by testamentary gift. It must be done at once or not at all; and the alternative of testamentary benefaction is not considered. Of course, if that alternative be considered, and a choice between the two, in fact be made, and without that consideration and that choice the gift would not have been made, then the gift is made in contemplation of death under the statute. *Page 98 
The choice which is made in that mental process of "contemplation of death" is not, "shall I or shall I not make a gift (of so much) to so-and-so?" — (if the donor makes onlythat choice, the gift is not taxable) — the choice is (essentially), "shall I make this gift now to so-and-so, or shall I make it by will? Which way will I accomplish more nearly allthe things I desire to have accomplished — by making a gift now or by waiting to make the benefaction by will?"
It would seem, moreover, that this point — that it is not requisite that the contemplation of death shall have been thesole cause for the making of the gift — was definitely decided in In re Grabfelder, 107 N.J. Law 520 (at p. 522, end);153 Atl. Rep. 532.
 IV.
Consider now the facts in the case at bar. The gift in question was made when the donor was almost seventy-three years of age, and he lived only one year thereafter. The gift was made to his wife and his four children (the natural recipients of his estate at his death), in equal shares; it consisted of practically the entire outstanding stock in the corporation bearing his name, organized and built up by him, and which (until this gift) had been solely owned by him for some twenty years. It amounted in the aggregate to over $3,000,000, and constituted (as a practical matter) his entire estate. His remaining assets were equalled by his debts. At his death, a year later, his estate was insolvent: his assets being about $300,000, and his debts and funeral expenses over $325,000 as found by the commissioner — $416,000 as claimed by appellant.
A year and a half before the gift, he had made his will — by which he left his entire estate to his wife, or in the event of her prior decease, equally among the children. It does not appear that he had made any will prior to that time. January 1st, 1925 — (five months before the making of the will) — he transferred from himself to the corporation over $1,000,000 in securities — which were in nowise needed by *Page 99 
the corporation. (It is true that corresponding indebtedness on the books of the corporation, from himself to the corporation was credited with this amount, but this indebtedness was merely nominal. Remembering that he was the sole owner of the company, it is obvious that the withdrawals thus carried on the books as debts, were substantially dividends — earnings which he had withdrawn and used for himself.)
Following the gift — although he retained only one share of stock — he continued as president of the company; continued to draw his previous salary of $30,000 a year; continued to draw at will from the company's funds for his own private purposes, just as before. (His withdrawals for the twelve months preceding his death totalled over $137,000.) He continued to attend at the company's place of business every day; "there was no difference" in his control and management of the business, after the gift of the stock from what it was before. He negotiated and determined large transactions without consulting anyone else.
The facts as to donor's age, date of death, and size and nature of gift, of course bring the case within the statutory provision as to presumption. But these same facts would have caused and justified the same presumption, irrespective of the statute, in the mind of the ordinary jury or any trier of facts who had the ordinary knowledge of human nature. It is in the highest degree humanly improbable that a man should give away his entire
estate of $3,000,000, to those to whom he would naturally give it at his death, without "contemplating his death" — without consideration as to how long he might reasonably expect to live and as to how and in what manner he would be able to live during that period — without considering and concluding in his mind that he would be able to live satisfactorily, for so long as he probably would continue to live, after making such a gift — without considering and determining that he preferred to give his estate at that time to those who he desired should have it after his death, instead of waiting until his death for such transfer: so improbable as to be incredible, unless there be satisfactory *Page 100 
proof of exceptional circumstances and exceptional motives.
If the donor's mind did go through this process of consideration and determination, then, as we have seen, the gift was made in contemplation of death, within the meaning of the statute — (save only that it must appear that this was the controlling motive or cause for the making of the gift — that the gift would not otherwise have been made).
That the donor must have had, and did have, this mental process in the instant case seems certain. It is difficult to conceive of any exceptional circumstances under which, by any possibility, this might not be true under the facts in the instant case — except a conversion to some belief or conviction of some religious or moral duty (somewhat akin to the Christian direction to the rich young man to sell all his possessions and give to the poor), or an actual derangement of his mental faculties. A man of moderate means might give his whole estate to save his child's life, without any such thought; a man with $3,000,000 might, without any such thought, give it all to some medical, charitable or governmental agency in time of pestilence, war, famine, or other public calamity or stress; but those are not the facts here, nor is there anything shown which would justify the normal human mind in believing that the donor did not have the mental process above mentioned.
It may be said (and is in fact said by appellant), that the donor was justified in believing that he could rely on continuing to receive his former salary of $30,000 a year, for his support and maintenance, for the rest of his life, or at least that he could rely on being adequately taken care of by his wife and children for the rest of his life. That is undoubtedly true. (The facts showing that his actual relationship to the business continued after the gift just as before, have already been mentioned.) But the fact that he did have such a belief would be only additional proof positive that he had given to the matter that very consideration already mentioned.
When he made his will, a year and a half before the gift, *Page 101 
he necessarily contemplated the testamentary final disposition and distribution of his estate at his death. When, a year and a half later, he made an actual distribution of his entire estatein praesenti, it is impossible (in the absence of extraordinarily exceptional circumstances — and none such are shown or intimated), that he did not contemplate that he was making a final disposition and distribution of his estate in the place and stead of a testamentary disposition thereof at his death — in the place and stead of that testamentary disposition which he had recently made — to and among the persons he had named as beneficiaries in that will.
The fact (adverted to by appellant) that he made the distribution among his wife and children, instead of to his wife alone as he had provided in his will, in nowise detracts from this conclusion. It indicates only that in giving further thought and consideration as to how he desired his estate to be distributed, he had changed his mind; that if he had not decided to make the gift, he probably or possibly would have changed his will.
 V.
The gift was made by the donor in contemplation of his death. Was that the controlling cause for the making of the gift? If not, it is not taxable. In re Sacks, supra; Wells v. UnitedStates, supra. Would he have made the gift if he had not had the intent and purpose then and thereby to accomplish the transfer of the subject-matter of the gift (being a material portion of his estate) to the person or persons who he desired should have the enjoyment of it after his death? Under the circumstances of this case, a negative answer to this last question seems inevitable. The question answers itself: Would he have made a final disposition and distribution of his entire estate to and among the persons who would naturally be, and whom he had already chosen as, his testamentary beneficiaries — if he had not had the intent and purpose so to do?
If he had given his entire estate to some person or persons other than his natural beneficiaries — or, if he had given only *Page 102 
a portion of his estate to only one or two of his natural testamentary beneficiaries — and if, in either of such cases, there were circumstances from which it would be possible to infer that the gift was, or could have been, made without any thought or consideration of his eventual death, or of the final disposition which must occur at his death: in such a case there might be room for argument that the gift was not the result of a purpose and intent to accomplish a transfer in acceleration of a testamentary transfer. But here there is no room for such an argument. No reasonable man, with the ordinary knowledge of human nature, can, from the facts in this case, conceive it possible that this gift would have been made unless the donor had had that contemplation of death which leads to testamentary disposition and made the choice to make the gift instead of a testamentary disposition. He might otherwise have made some gift or gifts, but not the gift which he did make; and it is the latter with which we are dealing and with which, only, we can be concerned.Cf. In re Bottomley, supra (at pp. 209 et seq.).
The contention of appellant is that "the motive which actuated decedent in making the transfers was his desire long expressed to have members of his family share in the corporation which certain of them had helped to build up."
There is testimony that about a year before the gift — between September, 1925, and January, 1926 — the donor had said to his attorney, "I am going to turn the business over to the boys;" that he had said a number of times before the gift that "he was going to transfer the stock to his sons, but he never got down to it," and (in reply to a leading question), his cashier also said that he also "spoke of giving some stock to his wife and daughters;" that "he wanted to reward the boys because they were doing well in the business;" the widow says that when he made the gift he said that "he wanted the children to enjoy the things while we were alive and get benefit while we were together" and "we were always talking about the children enjoying it. We said we would get as much pleasure as they would;" a daughter testifies similarly to the widow. *Page 103 
It has already been shown that none — nor all — of these additional desires, which were satisfied by the making of this gift, prevent the gift from having been made in contemplation of death. They not only do not prove that it was not so made, but they are of not the slightest weight in tending to prove thatthis gift, of practically the donor's entire estate, to his natural beneficiaries, was not so made.
He could have turned over the management of the business to the boys without giving them any more stock — or with a gift to them of a few shares each. Certainly, to fulfill this desire he did not need to give his entire estate, including the $1,000,000 or $1,500,000 of his own securities; and he did not need to give anything at the same time to his wife and daughters. Even if he wanted to give to all his children, and have the pleasure of seeing them enjoy it, he still did not need to give his entire estate, nor did he need to give at the same time to his wife. His desire "to have members of his family share in the corporation which certain of them had helped to build up" does not explain his giving them the extra $1,000,000 or $1,500,000, which the corporation did not need. Finally, he would never have given away his entire estate unless he had felt sure that he could safely rely on adequate income for the rest of his life. It is probable that he had some assurances that he would always continue to have his $30,000 salary and perhaps also some drawing account; there is no testimony that he was not given any such assurrances — though he well might rely, even without express assurances. Cf.Koch v. McCutcheon, 111 N.J. Law 154 (at p. 157);167 Atl. Rep. 752.
In her first affidavit the widow said that her two sons had accepted small and incommensurate salaries because of their father's statement that he intended to give his business to his wife and children. In view of the other inconsistent testimony as to what were the donor's reasons for making the gift, and the fact that neither son so testifies, and that it is not specified in the petition of appeal, the question of legal obligation to make the gift need not be considered; though it may be pointed out that this could not prevent the gift to *Page 104 
the wife and daughters from being taxable. Cf., also, In reBottomley, supra (at p. 109).
 VI.
Lastly, there is sufficient evidence in the case to justify the commissioner in finding — if he did so find and if it were
necessary for him so to find — that the donor did have an apprehension or belief that death might not be so far or indefinitely distant. He was seventy-two years old; had had severe arteriosclerosis for fifteen years; had high blood pressure and knew it; "always had these little quick spells;" and although physically active for one of his years, was careful always to walk upstairs slowly; and his death did occur a year afterwards, of cerebral hemorrhage — the breaking of one of the hardened arteries from which he had suffered. There is the further fact that the donor had been talking about giving the stock to his family for quite some years, but had not done so and did not do so until this time — which tends to indicate that the making of the gift, when it was made, was the result of some other causative factor than the desire, long expressed but never carried into action, to distribute the stock among his family.Cf. In re Grabfelder, supra.
There being ample evidence to support such a finding, this court cannot review and weigh the evidence and substitute its judgment for that of the commissioner. In re Dupignac, 96 N.J. Eq. 284; 125 Atl. Rep. 119; In re Hall, 94 N.J. Eq. 398;119 Atl. Rep. 669; In re Pierce, 89 N.J. Eq. 171; 104 Atl. Rep. 298.
The tax will be affirmed.
In view of the fact that appellant's briefs evidence a belief by appellant's counsel that the principles expressed in theSacks Case, supra, are in conflict with the conclusions herein set forth, these conclusions have been submitted to Vice-Chancellor Backes, who authorizes the statement that he concurs entirely in what has been said herein. *Page 105