The legislature of our state has ordained by statute that a transfer tax shall be levied upon real or tangible personal property within this state of a resident of this state or intangible personal property wherever situate of a resident of this state which is transferred by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor. N.J.S.A. 54:34-1, c.
On February 11th, 1940, Stephen H. Voorhees, a resident of Plainfield, New Jersey, died at the age of seventy-five years and six months. The executor of his will thereafter reported to the Inheritance Tax Bureau in response to the customary inquiry that on March 28th, 1930, the decedent had executed an agreement by which he had transferred certain securities of the value of $460,000 and insurance policies on his life of the face value of $40,000 in trust for the use and enjoyment of designated beneficiaries. Exclusive of the proceeds of the insurance policies, the securities of the trust had a fair market value of $244,177.62 as of the date of the settlor's death. The net estate passing by testamentary disposition was valued at $231,942.52. The State Tax Commissioner has included in the taxable estate of this decedent the corpus of the inter vivos trust. The representatives of the estate desire the propriety of this assessment to be further explored. N.J.S.A. 54:34-13.
The inter vivos transfer, upon investigation, was deemed by the commissioner to have been made in contemplation of death. This is the rationale by which the assessment is defended by the respondent. The appellants propose that the transfer was not made by the decedent in contemplation of death within the signification of our statute. A procession of cases illustrative of transfers made in contemplation of death as well as those not so motivated can be seen in my opinion in Squier v. Martin,131 N.J. Eq. 263; 24 Atl. Rep. 2d 665, joining which are the more recent proceedings in Kavanagh v. Kelly, 131 N.J. Eq. 398; 25 Atl. Rep. 2d 547; Plum v. Martin, 132 N.J. Eq. 1;26 Atl. Rep. 2d 529, and Dommerich v. Kelly, 132 N.J. Eq. 220.
The field of statutory interpretation has now been quite *Page 232 
thoroughly traversed. The authorities applicable to the taxation of such transfers need not be warmed over in the present memorandum. A survey of the legislation and its evolution and an acquaintance with the adjudications necessitate the conviction that any inter vivos transfer which is in fact a substitute for a testamentary (or intestate) transfer shall be subject to the tax.
The present appeal submits for decision a factual issue. Was the particular transfer accomplished by this decedent made by him in contemplation of death within the import and intendment of the statute? Circumstances of a revelatory nature in the pursuit of such an inquiry were outlined in Kavanagh v. Kelly, supra, and in Dommerich v. Kelly, supra.
The exhibits and other proofs have been studiously examined. In the present proceedings, the very character and prospective function of the trust indenture constitute the most persuasive evidential manifestation of the controlling and impelling purpose of the settlor. The settlor was sixty-five years of age and retired from business when he created the trust. The duration of the trust is measured by six lives in being, one of whom was then only nine years of age. More definitely described, the transfer required the income to be paid to the settlor's wife during her life or "until her remarriage." (Did the settlor contemplate that his wife would remarry before his death?) Upon her death orremarriage, there was to be paid annually out of income $600 to Catherine Voorhees Vail, $1,500 to Marion Gray Woolsey, $600 to Grace H. Squiers and the balance of income in equal shares to the settlor's two daughters; upon their respective deaths to their lineal descendants or in the absence of descendants of one, then all to the surviving daughter and upon the death of the survivor of the two daughters, the income is to be divided in equal shares among the grandchildren of the settlor (he then had only one) and to the lineal descendants of any deceased grandchild, perstirpes. What disposition is made of the corpus? On the death of the survivor of the three income beneficiaries first named and after the death of the two daughters and the grandson (then nine years old), *Page 233 
the corpus is to be equally divided among the decedent's grandchildren then surviving (whose future existence was merely in contemplation), the lineal descendants of any deceased grandchild sharing, per stirpes; or in case there be no grandchild or any descendant of a deceased grandchild surviving, then the corpus is to pass to the settlor's brother and sister in equal shares or to the survivor of them; or in case neither of them be living, then to the National City Bank Club.
This transfer bears no resemblance whatever to a present, outright, absolute, unqualified and consummate gift for the immediate needs and enjoyment of the donees, as in Moore v.Martin, 125 N.J. Law 189; 14 Atl. Rep. 2d 482; MacGregor
v. Martin, 126 N.J. Law 492; 20 Atl. Rep. 2d 427;Wimpfheimer v. Martin, 126 N.J. Law 502; 20 Atl. Rep. 2d433; Kellogg v. Martin, 130 N.J. Eq. 338; 22 Atl. Rep. 2d430; Squier v. Martin, supra; Kavanagh v. Kelly, supra;Plum v. Martin, supra. The distinctive features of a typical testamentary disposition literally beam from this deed of trust. By it, the decedent disposed of approximately one-half of an estate then valued at a million dollars. In it, he methodically installs provisions for the post mortem distribution of income and corpus. From it, his great grandchildren may (as evidently he contemplated), derive benefits. Significantly the decedent two years later adopted substantially the same elaborate plan for the testamentary distribution of the remainder of his estate and measured the duration of his testamentary trust by the lives of three of the same persons, including the youngest, who were named in his deed of trust. It is too venturesome to infer that the decedent was actuated by unidentical motives in making identical transfers of such far-reaching effectiveness.
The object of the statute is to tax not only testamentary and intestate transfers but also inter vivos transfers which are in fact makeshifts employed to effectuate a purpose normally accomplished by will. The statute envelops all transfers which in reality are mere substitutes for testamentary dispositions.Squier v. Martin, supra, and cases therein *Page 234 
cited. Our statute and others of like import have been deliberately designed to encircle those substitutes for testamentary dispositions which are ingeniously contrived to baffle the taxing authority and, perchance, elude taxation.
The robust health of the decedent at the time he consummated the inter vivos transfer is conceded. It is a circumstance of materiality. Yet, a transfer actually made in contemplation of death is not exempt from taxation because the transferor did not believe that his death was imminent or likely to occur in the near future. Schweinler v. Martin, 117 N.J. Eq. 67;175 Atl. Rep. 71. The insistence that there is a presumption that a transfer made by a decedent more than two years before his death is not made by him in contemplation of death is untenable. In such event, there is no artificial presumption whatever. The determination of the fact must then be governed by the fair preponderance of the credible evidence. Squier v. Martin,supra (at p. 272).
The suggestion that this capacious trust agreement was improvised by the decedent to unload upon his wife the annoyance of currently defraying the household expenses is sophistical. The intimation that the decedent in creating the inter vivos trust supposed that he might possibly outlive the beneficiaries is fantastic. If assumed, was he counting upon the exceptional longevity of his own life or the untimely death of the beneficiaries of his gift? Such factual inferences are purely imaginary. The comment in In re Brockett, 111 N.J. Eq. 183 (atp. 188); 162 Atl. Rep. 150, relates to a transfer intended to take effect in possession or enjoyment after death; transfers in contemplation of death were not involved or considered in that case. Schweinler v. Martin, supra (at p. 90).
The evidence in the present case generates the irresistable inference that this decedent intended to accomplish by means of the trust agreement the transfer of a material portion of his estate for the benefit of persons who should have the maximum enjoyment of it after his death. See Cairns v. Martin,130 N.J. Eq. 313; 22 Atl. Rep. 2d 415.
 A decree will be advised affirming the assessment. *Page 235