ESTATE OF CORA C. REYNOLDS, DORIS R. MAY, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101034. Promulgated September 5, 1941.

*Edgar Allyn Buttle, Esq.,* and *Alfred B. Van Houten, Esq.,* for the petitioner.

*W. R. Lansford, Esq.,* for the respondent.

48

OPINION.

OPPER: Irrespective of the situation which existed prior to 1931,[1] there can be no question that as of 1934, when this combined insurance and annuity contract came into being, and thereafter, when the trust of the "insurance" policies was created, the Congressional policy of taxing transfers of property in which the decedent had retained any interest during his lifetime had become firmly and unmistakably established.[2] Nor can there be doubt that for pur-

---

[1] Cf. *Hassett* v. *Welch,* 303 U. S. 303 ; *May* v. *Heiner,* 281 U. S. 238, with *Estate of Mary H. Hughes,* 44 B. T. A. 1196.

[2] Revenue Act of 1932—
SEC. 803. FUTURE INTERESTS.
(a) Section 302 (c) of the Revenue Act of 1926, as amended by the Joint Resolution of March 3, 1931, is amended to read as follows :
"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the

poses of the Federal estate tax a contract with an insurance company possessing the characteristics of the one here in controversy is to be considered a single inseparable arrangement in which insurance and annuity features are inextricably connected; that it was "an agreement which was entire in character, by which the [insurance] company promised him a small but sure income from the money by way of annuity, and the payment * * * at his death, and that the money was so paid at his death in fulfillment of the promise." *Helvering* v. *Tyler* (C. C. A., 8th Cir.), 111 Fed. (2d) 422; affd., 312 U. S. 657, on authority of *Helvering* v. *Le Gierse*, 312 U. S. 531 (decided the same day).

The only question then that remains on the present issue is whether creation of an irrevocable trust and assignment to it of the portion of that contract promising to pay the stipulated sum at death is sufficient ground for excluding the value of that promise from decedent's taxable estate. We are of the opinion that it is not.

It is true that in *Helvering* v. *Le Gierse*, *supra*, the decedent had retained, in the insurance feature of her contract, rights with respect to nomination of beneficiaries, and for borrowing upon and surrendering the policy, sometimes referred to as "property rights." But if such interests were important to the decision in the *Le Gierse* case, it must have been because they were comparable to those powers in other property situations generally described by reference to the right to alter, revoke, or terminate. There is in section 302 (d)[3] a provision unquestionably devised to cover that relationship to transferred property. Nevertheless, in passing from the question whether decedent's contract in the *Le Gierse* case was insurance to the consideration of its taxability in the view that it was not, the Supreme Court relied not upon section 302, subdivision (d), but upon subdivision (c), saying:

* * * The only remaining question is whether they [the payments to the beneficiaries] are taxable.

property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

[3] Sec. 302. [Rev. Act of 1926.] The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

* * * * * * *

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

We hold that they are taxable under section 302 (c) of the Revenue Act of 1926, as amended, as a transfer to take effect in possession or enjoyment at or after death. See *Helvering* v. *Tyler, supra* * * *.

In the latter case, from which we have quoted above, the Court of Appeals, following the portion of the opinion already set out, went on:

* * * As that was the real transaction between Mr. Tyler and the [insurance] company he must be held to have made a transfer of that amount intended to take effect at his death and his estate was taxable in respect to the money paid to the widow at his death pursuant to the transfer made by him.

We have here a situation in which a trustee has been interposed between the ultimate beneficiaries and the decedent. The fiduciary, however, does no more than represent and act for the ultimate beneficiaries. It obtains the legal title, but the equitable rights rest at all times in the persons for whose benefit the trust was in fact created, those, of course, for whom the decedent intended the enjoyment of the insurance company's payment of the principal sum. True, the trust was irrevocable. But the effect of the arrangement was and could have been no different than if decedent had specified the beneficiaries in the policy, and renounced any rights of alteration, pledge or surrender. Reduced to its simplest terms, therefore, the question here is whether a decedent retaining for life the benefit of property transferred to an insurance company, may escape the provisions of section 302 (c) by reason of the irrevocability of the transfer, or through a procedure comparable to the renunciation of any power to alter or revoke by change of beneficiaries or surrender or pledge of the policy.

We do not think that, consistent with the unmistakable mandate of the statute and with the cases prohibiting consideration of artificial or technical devices of conveyancing, this is a permissible result. *Helvering* v. *Hallock*, 309 U. S. 106. By a transfer of her property to the insurance company decedent obtained its agreement to return a roughly equivalent value in two interrelated stipulations. Payments tantamount to the income from the whole fund deposited were to go to her during her life. And upon her death, whenever that occurred, a fixed principal sum was to be paid to decedent's estate or designees. By parting with the latter while retaining the right to receive the income for her life, petitioner effectively designated those who would succeed to the property upon her death. She did so, perhaps, in a manner so final as to be beyond her power of recall. But it remains to be decided whether that arrangement for succession, accompanied as it was by retention of benefits during her lifetime, suffices to relieve decedent's estate of liability for tax upon the value of the principal. We do not think that it does, "even

though ownership of the fund vested in the children at once." *Estate of Mary H. Hughes*, 44 B. T. A. 1196.

If it were possible for a decedent by means of anticipatory arrangements, however skillfully devised, to sever life interest from remainder and to dispose irrevocably of the latter while retaining the former until her death, the purpose of the amendment to section 302 (c) accomplished by the Revenue Act of 1932, section 803, could be completely stultified. Here the contract with the insurance company was one indivisible transaction. *Helvering* v. *Le Gierse, supra; Helvering* v. *Tyler, supra.* The right to receive the income in the form of annuity payments was inseparable from the arrangements made with respect to disposition of the principal in the form of insurance payments. It was with a part of that indivisible contract—that relating to the remainder payable at her death—with which decedent dealt when she assigned the insurance aspect to the trust. It was with respect to the balance, the life interest, that she acted when she retained for her remaining life the right to receive the annuity payments. Viewing the action taken as a whole, the effect must be that decedent made a transfer—or a series of transfers—of her property "intended to take effect in possession or enjoyment at or after his death" and "under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the * * * enjoyment of, or the right to the income from, the property." *Commissioner* v. *Wilder's Estate* (C. C. A., 5th Cir.), 118 Fed. (2d) 281.

The correctness of this view may be supported by reference to one or two examples. Suppose that decedent had transferred to the trust her entire contract with the insurance company and had provided that through the annuities she was to be paid the income until her death and that the remainder, consisting of the payment of the principal sum at her death, was to go to the designated beneficiaries. Can it be doubted that such a trust would come within the express description of the statute? Again, suppose that in *Estate of Mary H. Hughes, supra,* decedent had transferred to a trust that part of her contract with the insurance company which stipulated for payment of the principal, retaining the right to receive the income payments for her life. Would a different result have been reached there merely because the decedent had created a trustee to stand in the place of the individual remaindermen?[4] To our mind the result required in the present situation is equally clear. It was accordingly proper for respondent to include as part of decedent's taxable estate the prin-

---

[4] In the *Hughes* case, of course, the transfer having occurred prior to 1931, a more difficult question was presented, since the provisions of section 302 (c) had not at that time been changed.

cipal amount payable by the insurance company upon her death to the trust erected by her for the enjoyment of her beneficiaries.

Petitioner now concedes that an additional insurance policy payable specifically to decedent's daughter is governed by the principle of *Helvering* v. *Le Gierse, supra.* The proceeds of that policy were also properly included without benefit of the statutory exemption.

The final question is whether fees and expenses of a proceeding to account for another trust may be deducted either as a charge against the estate or as an expense of administration. On the former ground, they are precluded since the proceedings followed decedent's death, and compliance with the requirement that the debt exist at the date of death consequently fails. And they must also be disallowed as an administration expense. *Estate of Frederick E. Baldwin,* 44 B. T. A. 900.

*Decision will be entered under Rule 50.*