This appeal occasions an investigation of the legal and factual propriety of a transfer inheritance tax assessment on an intervivos transfer. The pertinent legal principles are exemplified *Page 419 
by the extended procession of our reported decisions. The factual environment of the present controversy is exhibited by the stipulation incorporated in the transcript of the proceedings before the Tax Commissioner.
One Wainwright Parish, a resident of Gladstone, Morris County, New Jersey, died testate on October 1st, 1941, at the age of seventy-four years. He had pursued the profession of an architect and resolved to retire and enjoy his remaining years on a farm. In 1928 he married Mrs. Eleanor B. Hewitt, a widow, and became the stepfather of her two sons, to whom he became affectionately attached. During the period of the economic depression, he appreciated the dependency of his wife and himself upon the constancy of his capital resources. Amid the prevailing evidences of desperate liquidation and the noticeable evaporation of market values, he experienced some anxiety concerning his own finances. He was presumably affluent at the time of his retirement. I note that at death his net estate, exclusive of the proceeds of the life insurance policy, approximated $450.000.
The prospect of poverty is always more alarming to the conservative rich than to the improvident poor. He had arrived at the age of sixty-nine years in 1935, and he had evidently become aware of a plan, then often advocated by investment consultants, which was represented to furnish a "hedge" against apprehended future losses. His meditations upon the advisability of adopting the plan assuredly encompassed his conceptions of the probabilities and apprehended possibilities of the future. It seems reasonable to infer that among his thoughts was that of the security of his wife and stepchildren if the financial crisis should continue with its irreparable consequences. He resolved to safeguard for himself and those naturally entitled to his bounty a material portion of his assets by means of the "hedge."
Such was the state of his mind when, on December 27th, 1935, he purchased from the Travelers Insurance Company of Hartford, Connecticut, for a consideration of $27,576, an annuity contract by the terms of which the company agreed to pay to him on June 6th, 1936, the sum of $735.31 and a like sum semi-annually thereafter during the continuance of his *Page 420 
life. Simultaneously and indeed, only in conjunction with the annuity contract, the decedent acquired for a single premium of $82,424 from the same company a policy ostensibly insuring his life in the sum of $100,000 payable to his executors, administrators or assigns.
On December 30th, 1935, the decedent assigned the life insurance policy to the Bank of New York in trust. The trust indenture directed the trustee to hold and manage the policy and to hold, manage, invest and re-invest the proceeds and avails of the policy when collected, and to pay the net income therefrom to the decedent's widow and the corpus, upon her death, to her children, the stepchildren of the decedent.
Upon the discovery by the Tax Commissioner that the so-called life policy in fact was simultaneously and conjointly issued with the annuity contract, an additional assessment was levied upon the proceeds of the life insurance policy. It is to this latter assessment that the present appeal is addressed.
It is stipulated that the insurance policy would not have been issued without the annuity contract. In combination, the one obviously neutralizes the risk customarily inherent in the other. The total sum passing from the insured to the Insurance Company was $110,000, of which $10,000, or ten per cent., was undoubtedly allocated to what are known as "loading charges." In return, the decedent became entitled to receive an annuity during his lifetime of $1,470.63, or an income of slightly less than one and one-half per cent. on his outlay. Upon his death, his estate, pursuant to the terms of the insurance policy as issued, would become entitled to receive the $100,000. The transaction had the substantive elements and practical effects of an investment.
In recognition of the decisions of the United States Supreme Court in Helvering v. Le Gierse, 312 U.S. 531; 85 L.Ed. 996,
and Keller v. Commissioner, 312 U.S. 543; 85 L.Ed. 1032, it is acknowledged that the proceeds of the life insurance policy issued in such circumstances in conjunction with the annuity contract are not exempted from taxation by virtue of the provisions of R.S. 54:34-4, f; *Page 421 N.J.S.A. 54:34-4, f. See, also, Old Colony Trust Co. v.Commissioner, 102 Fed. Rep. 2d 380, and affirmance of judgment per stipulation in Tyler v. Helvering, 312 U.S. 657;85 L.Ed. 1105.
If for purposes relating to transfer inheritance taxation, the transaction here implicated is examined with circumspection, it is easy to perceive the kernel within the shell. The two contracts constitute a single inseparable project in which insurance and annuity are combined. Cf. Commissioner of InternalRevenue v. Clise, 122 Fed. Rep. 2d 998, 1001. The decedent transferred $110,000 of his assets to the insurance company and thereby obtained the contractual obligation of the company (1) to pay to him the stipulated income to be derived from the entire fund during his life, and (2) upon his death, to pay the fixed sum of the principal to his estate or to his designated beneficiaries. Intrinsically, the transaction is a transfer of the principal sum invested, coupled with a reservation for the benefit of the transferor, of a life interest. The decedent retained for life the benefit of the fund. Perhaps he could have procured a larger return from a different investment, but his object was to obviate, or at least minimize, the possibility of any further shrinkage in the value of his estate. Recognizing substance rather than form, the technical use of the two contracts did not disjoint the life interest from the remainder which ultimately was to become the corpus of the trust. Estate of Cora C. Reynolds, 45 B.T.A. 44.
The retention by a transferor of the income of the fund for his life is a significant circumstance. Hartford v. Martin,122 N.J. Law 283; 4 Atl. Rep. 2d 31; Carter v. Bugbee,92 N.J. Law 390; 106 Atl. Rep. 412; Koch v. McCutcheon,111 N.J. Law 154; 167 Atl. Rep. 752; In re Perry, 111 N.J. Eq. 176;162 Atl. Rep. 146.
The use of the insurance form of investment by which the shifting of the economic benefits of the fund and the succession to its full beneficial enjoyment are intended to be postponed until the death of the transferor, is likewise a noteworthy factor. Death of the decedent was the event which was intended to bring the $100,000 into being for the exclusive *Page 422 
enjoyment of the designated beneficiaries and the event upon which depended its transmission to the fiduciary representing those beneficiaries. Klein v. United States, 283 U.S. (at p.234).
In contemplating the acquisition of the life insurance policy, the decedent naturally premeditated at least the inevitability of his death and the post mortem possession and enjoyment of the eventual proceeds of his investment by his designees. In reGemmell, 123 N.J. Eq. 315, 318; 197 Atl. Rep. 428.
One may, of course, resort to any legal method available to him to avoid or diminish his tax liability, but in the field of this class of taxation, the taxing authority has become obliged to detect the artificialities by which the transfers are so often disguised. The refinements or technicalities of contracts and conveyances are not the true diagnostics of the taxability of a transfer. It is more efficient to put in contrast on the one side the substance and practical effect of what was actually done, and on the other the import and design of the terms of the taxing statute. Helvering v. Hallock, 309 U.S. 106; 60 S.Ct. 444;84 L.Ed. 604; 125 A.L.R. 1368. After all, taxation is a practical matter; the problems are essentially pragmatical. Here again a trustee has been interposed between the decedent and the ultimate beneficiaries. True, the trust was irrevocable, but so also the annuities were made dependable. The trust indenture was merely a serviceable vehicle with which to transport in a testamentary style at the settlor's death a portion of his estate to thecestuis que trust. The present transfer is one of a taxable character regardless of the existence of a motive, if any, to avoid or evade taxation. 51 Am. Jur. 43 § 10.
In view of the conservative reason for the investment, it seems fantastic to suppose that a cancellation of the policy by Mrs. Parish during the lifetime of the insured at its surrender value was regarded by either as probable. If the decedent had intended to make a complete, absolute, and immediately effective gift, why would he resolve to invest a material portion of his estate in such a manner that an enjoyment of it by the donee before his death would necessitate *Page 423 
the loss incident to the surrender of the policy. Guggenheim v.Rasquin, 312 U.S. 254, 257. Cash or securities could well have been deposited in the trust instead of a single premium life insurance policy payable upon the event of death and having a surrender value based on a mortality table.
A case revealing a remarkable analogy to that sub judice isBarillet v. Kelly, 131 N.J. Law 140; 35 Atl. Rep. 2d457, in which our Supreme Court affirmed the tax assessment. The assessment here impugned might well be affirmed on the authority of that adjudication, but counsel for the petitioner forewarned me at the oral argument that in such event the ultimate destination of his appeal would be in the court of last resort. Hence, in obedience to the spirit, though outside the letter, of the constitutional requirement (article VI, sectionII, paragraph 5), I announce at some length the reasons for my conclusion that the transfer of the decedent is taxable as one intended to take effect in possession and enjoyment at and after the decedent's death. The statute envelops all transfers which among incidental objects are in reality substitutes for testamentary dispositions. Central Hanover Bank and Trust Co.
v. Martin (Court of Errors and Appeals), 129 N.J. Law 127;28 Atl. Rep. 2d 174; affirmed, sub nom. Central HanoverBank and Trust Co. v. Kelly, 319 U.S. 94; 87 L.Ed. 1282.
Having resolved that the transfer is taxable as one intended to take effect in possession or enjoyment at or after the decedent's death, it is unnecessary to determine the contention of the respondent that the transfer is also taxable as one made by the decedent in contemplation of death. The proofs are not persuasive that the transferor entertained any expectation of his death in the immediate future. It is to be realized, however, that a transfer may be taxable even though made in the entire absence of any belief or apprehension of the possibility of approaching death. A transfer which is made "in contemplation of death" in the sense that it is made in contemplation of the knowledge that death is eventually inevitable, and made with the purpose and intent of accomplishing, and which does accomplish, a distribution or transfer in lieu and stead of a testamentary disposition, is taxable under *Page 424 
the statute. In re Schweinler, 117 N.J. Eq. 67, 73;175 Atl. Rep. 71; In re Bottomley, 92 N.J. Eq. 202; 111 Atl. Rep. 605;United States v. Wells, 283 U.S. 102. If the motive for the transfer be of the sort which leads to testamentary disposition, the transfer is taxable. Cf. McCaughn v. Real Estate Co.,297 U.S. 606, 607. It is not a requisite of taxability that the contemplation of death should have been the sole motive for the transfer. In re Grabfelder, 107 N.J. Law 520; 153 Atl. Rep. 532;In re Schweinler, supra; In re Hartford, 122 N.J. Eq. 489;194 Atl. Rep. 800. *Page 425