THE ATTORNEY GENERAL
OF TEXAS
ATTORNEY GENERAL



November 29, 1967

Hon. Robert S. Calvert                    Opinion No. M-165
Comptroller of Public Accounts
Austin, Texas                             Re: Whether certain deficiency
                                          determinations for sales
                                          and use taxes by the Comp-
                                          troller are valid, and
Dear Mr. Calvert:                         related questions.

You request our opinion regarding deficiency determinations
showing taxes, penalties and interest due by a public utility
corporation under the Texas Limited Sales, Excise and Use Tax
Act. You advised that the deficiency determinations contained
the following statement: "In particular, we find error in the
following: failure to properly report and remit sales and/or
use tax as required by the Limited Sales, Excise, and Use Tax
Act. These discrepancies were revealed by an audit of your
records dated October 15, 1964. Copies of this audit, work-
sheets, and letter of transmittal are enclosed for your records."
You advised further that the taxpayer against whom the defi-
ciency determinations were issued was a purchaser of tangible
personal property and your first question was whether or not
these deficiency determinations as issued are valid.

I.

Our answer to your first question is in the affirmative.
The issuance of a deficiency determination is authorized by
Article 20.06(A)(1), Taxation-General, Vernon's Civil Statutes,
which provides:

> "If the Comptroller is not satisfied with the
> return or returns of the tax or the amount of
> tax required to be paid to the State by any
> person, he may compute and determine the amount
> required to be paid upon the basis of the facts
> contained in the return or returns or upon the
> basis of any information within his possession
> or which may come into his possession. Nothing
> in this or any other section of this Act shall
> be construed to preclude the Comptroller from
> proceeding against the consumer for any tax

> which the consumer should have paid but failed
> to pay."

The deficiency determinations contain the amount required to be paid, which was determined upon the basis of the information in the Comptroller's possession. The information upon which the Comptroller relied is an audit of the taxpayer's records dated October 15, 1964. Therefore, the deficiency determinations contain on their face the statutory requirements, i.e., the amount computed and determined to be paid and the basis upon which the determinations are made. The only question remaining, therefore, concerning the validity of the determinations is whether or not it placed the taxpayer on notice as to what tax was due. The determinations contain the words "sales and/or use tax." An examination of the deficiency determinations, and the audit worksheets attached, do not purport to distinguish as to which tax was due, the sales tax or the use tax. The audit worksheets, however, do detail each and every transaction upon which a claim of additional tax is made. These transactions are all purchases by the taxpayer and each invoice, the date, the person from whom purchased, and the amount are detailed on the audit worksheet. Summaries are then prepared showing the totals contained in the scheduled worksheets and grouping these totals by taxable quarters and then assessing the tax, penalty, and interest to be due. It is well settled that the sales and use tax are complementary taxes which in their every characteristic are designed and enacted to supplement and complement each other. State ex rel. Transport Mfg.Equip.Co. v. Bates, 224 S.W.2d 996 (Mo.Sup. 1949); United States Gypsum Co. v. Green, 110 So.2d 409 (Fla.Sup. 1959). In Texas, the sales tax is a tax on the transaction and not a tax on the parties to the transaction. Calvert v. Canteen Co., 371 S.W.2d 556 (Tex.Sup. 1963); Young & Co. of Houston v. Calvert, 405 S.W.2d 174 (Tex.Civ.App. 1966; error ref.). Apparently the taxpayer was placed on notice of each and every transaction for which a tax was claimed. Inasmuch as these are complementary taxes, a defense to one would be a valid defense to the other unless the taxpayer could show that he was injured by the assessment of one where the other tax would not have applied. Since no facts indicate that an injury occurred, our conclusion, therefore, is that the deficiency determinations are authorized by statute and conform in the issuance thereof to the statute, and place the taxpayer on notice of the facts upon which a claim for additional taxes are being made. We must, therefore, conclude that the deficiency determinations as issued in this case are valid.

## II.

Your second question is whether the Comptroller may proceed against the vendee located in Texas for collection of the unpaid taxes before proceeding against the Texas vendor.

The cases heretofore cited hold that the sales and use tax is a transaction tax. Consequently, the tax liability must fall upon each party to the transaction, i.e., the purchaser as well as the seller, until the tax is paid to the state. The negligence or failure of the seller to collect the tax from the purchaser does not relieve the purchaser from the tax liability. Spencer v. Mero, 52 So. 2d 679 (Fla.Sup. 1951); Klien Town Builders v. Department of Revenue, 222 N.E.2d 482, 484 (Ill.Sup. 1967). In the latter case, the Court pertinently observed:

> "The primary liability is incurred by the one who purchases for use, and the seller's failure to collect the tax cannot operate to discharge the purchaser's liability. . . .

> "The statute does not contemplate that both the retailer's occupation tax and the use tax reach the State treasury with respect to any one transaction, but unless it is shown that the purchaser paid use tax to the supplier or that the latter paid retailers' occupation tax to the State, there is nothing to preclude the Department from collecting either the one tax or the other."

Article 20.04 (J), Taxation-General, Vernon's Civil Statutes, does not prevent a collection from the purchaser. This Article provides:

> "The storage, use or other consumption in this State of tangible personal property, the receipts from the sale, lease, rental or use of which are required to be included in the measure of the limited sales tax, or tangible personal property upon which a use tax has been paid by the taxpayer using said tangible personal property, is exempted from the use tax imposed by this Chapter."

While no Texas cases have been found which construe this provision, the Legislature provided in Article 20.06(A)(1), " . . . Nothing in this or any other section of this Act shall be construed

to preclude the Comptroller from proceeding aginst the consumer for any tax which the consumer should have paid but failed to pay."

Consequently, the Legislature has provided a mandate that no section of the Act, including Article 20.04(J) can be construed in a manner to preclude the Comptroller from proceeding against the consumer.  In this respect identical statutory provisions to Article 20.04(J) have already been construed by the Supreme Court of Rhode Island in Capitol Building Company, Inc. v. Langton, 221 A.2d 99 (1967), wherein the court held that the exemption did not pertain to the vendor from whom the purchaser made his purchases. The Court reasoned that it applied to the purchaser for any sale of the same personal property that the purchaser might make, and that the exemption was in the statute to protect the consumer or purchaser from double taxation and not to protect the vendor. There is no showing in this case that the taxpayer is subject to double taxation or that the taxes on this transaction have been paid.  Consequently, we must conclude that the Comptroller has authority on any given transaction to proceed against the purchaser or the seller or both until the tax is paid.  This authority exists on both the sales and the use tax; and without any showing of injury, it does not matter which tax is being asserted against the purchaser.

### III.

Your third question is what penalties and interest, if any, may be properly assessed and at what time.  Article 20.05(C), Taxation-General, Vernon's Civil Statutes, provides as follows:

"(1)  On or before the last day of the month following each quarterly period of three months, a return for said quarterly period shall be filed with the Comptroller in such form as the Comptroller may prescribe.

"(2)  For purposes of the Limited Sales tax a return shall be filed by every person subject to the tax.  For purposes of the use tax a return shall be filed by every retailer engaged in business in the State or by every person who has purchased tangible personal property, the storage, use or other consumption of which is subject to the use

> tax, but who has not paid the use tax due to a
> retailer required to collect the tax."

Clearly the taxpayer herein was a "person subject to the tax":
first, the taxpayer was a purchaser on a taxable transaction and
was required to file a limited sales tax return on or before the
last day of the month following each quarterly period; secondly,
the taxpayer was required to make a use tax return, since it did
not pay the use tax to its retailer and since it purchased tangible
personal property, the storage, use or other consumption of which
was subject to the tax.

Article 20.05(D)(3), Taxation-General, Vernon's Civil Statutes,
provides for returns filed by the purchaser:

> "In case of a return filed by the purchaser, the
> return shall show the total sales price of the
> tangible personal property purchased by him, the
> storage, use or consumption of which becomes sub-
> ject to the use tax during the preceding reporting
> period."

The sales price of the tangible personal property purchased by
the taxpayer, which the return requires the taxpayer to show, is
both the basis for the sales tax and the use tax.

Article 20.05(H), Taxation-General, Vernon's Civil Statutes,
provides:

> "If any person shall fail to . . . pay to the
> Comptroller the tax as imposed herein when said
> report or payment is due, he shall forfeit five
> per cent (5%) of the amount due as penalty, and
> after the first thirty (30) days he shall for-
> feit an additional five per cent (5%). Provided,
> however, that the penalty shall never be less
> than One Dollar ($1). Delinquent taxes shall
> draw interest at the rate of six per cent (6%)
> per annum, beginning sixty (60) days from the
> date due." (Emphasis supplied.)

This statutory provision applies to all "persons" liable for
sales or use taxes under Chapter 20, Taxation-General, not merely
to retailers or other persons mentioned in Article 20.05.

Inasmuch as the deficiency determinations allege that the taxpayer failed to pay the proper amount of taxes when due, penalties and interest were properly assessed. The due date of the taxes alleged to be due was the last day of the month following the quarter in which the purchase was made. From the facts submitted it appears that all of these purchases were made and the taxes became due for more than thirty (30) days prior to the date of payment; consequently, a ten per cent (10%) penalty attached and the delinquent taxes began to draw interest at the rate of six per cent (6%) sixty (60) days after the last day of the month following the quarterly period for which the tax delinquency is claimed. The computation of taxes, penalties and interest as shown in Exhibit I appear to be correct.

## IV.

Your next question concerns the taxability of tangible personal property which was shipped or delivered after September 1, 1961, pursuant to contracts entered into prior to September 1, 1961.

### Contract A

Contract A provides that the electric company will furnish material and equipment known as "telephone central office equipment," prepare the specifications therefor, and install the equipment in a building provided by the telephone company. The installation of this equipment was in a special purpose building, designed for the purpose of housing such equipment and the equipment was permanently attached to the building and cannot be removed without destroying the utility of the building. It is undisputed that it has been for many years the intention of the two parties to the contract to treat the building and the equipment housed therein as real property. From the evidence presented, this intention has been further expressed by treating this equipment as improvements to the land and as a part thereof for ad valorem tax purposes. The transcript and evidence on this matter is uncontradicted. This equipment, therefore, meets the tests set out for determining the nature of fixtures in Swern Public Service Co. v. Smith, 31 S.W.2d 472 (Tex.Civ.App. 1929, no writ); also, Hutchins v. Masterson, 46 Tex. 551 (1877). Consequently, we conclude therefrom, as a matter of law, that this equipment when installed constitutes real property. Southern California Telephone Co. v. State Board of Equalization, 82 P.2d 422 (Cal.Sup.Ct. 1938); Hutchins v. Masterson, supra;

G. A. Jones v. T. D. Bull, 85 Tex. 136 (1892); C. D. Shamburger Lumber Co. v. Bredthauer, 62 S.W.2d 603 (Tex.Civ.App. 1933, writ dism.); F. L. Carmiechel v. U.S., 273 F.2d 392 (5th Cir. 1960); 22 Am.Jur. 793, Fixtures, Sect. 72. The electric company, therefore, became a contractor whose duty it was to improve the realty belonging to the telephone company. The materials and equipment used by the electric company were all purchased or specially fabricated prior to September 1, 1961. The only transaction occurring after September 1, 1961, was the shipment of the equipment to the contractor and the incorporation of the materials by the contractor into the realty of the taxpayer. The issue presented by your opinion request is whether there is a tax on the equipment and materials used by the contractor to perform this contract which was entered into prior to September 1, 1961. Simply stated, is the incorporation of these materials into realty a taxable event under the Limited Sales, Excise and Use Tax Act? Since the facts are undisputed, the issue presented is purely a question of law.

While there are no Texas authorities on this subject, the authorities throughout the United States appear to be divided as to whether the contractor who incorporates materials into real property is a retailer or a consumer of the materials so used. 163 A.L.R. 267 (1946); 171 A.L.R. 684 (1947). The majority and more modern view is that the contractor is a consumer. Duhame v. State Tax Commission, 179 P.2d 252 (Ariz.Sup. 1947). The reason for this rule is stated by this court at page 259:

> "When a contractor fabricates his materials for the contractee, and the completed structure is erected on the owner's land, it is as much real property as the land itself. The constituent elements of tangible personal property have been destroyed by their incorporation into the completed structure. And such a contractor, therefore, is not making a sale of tangible personalty to his contractee.
>
> . . .
>
> . . .
>
> "While perhaps a contractor may be making a sale in the loose sense of the word, and while, that loose sense might also be a sale at retail, he is certainly not making a sale at retail of tangible personal property which is the necessary meaning

of the term 'sale' when used in this Act. By
the definitions in this Act a contractor when
fabricating personalty into realty neither sells,
resells, sells at retail, nor can he be consider-
ed a retailer."

Consequently, we must conclude that the incorporation of tan-
gible personal property into realty, as an improvement, is not a
sale in and of itself, unless the Legislature has specifically
deemed such to be a taxable transaction. In this respect Article
20.01 (T) expresses the legislative intent regarding contractors:

"'Contractor' or 'Repairman' shall mean any per-
son who performs any repair services upon tan-
gible personal property or who performs any im-
provement upon real estate, and who, as a necessary
and incidental part of performing such services, in-
corporates tangible personal property belonging to
him into the property being so repaired or improved.
Contractor or repairman shall be considered to be
the consumer of such tangible personal property
furnished by him and incorporated into the property
of his customer, for all the purposes of this Chap-
ter.

"(1) The above provision shall apply only if the
contract between the person performing the ser-
vices and the person receiving them contains a lump
sum price covering both the performance of the
services and the furnishing of the necessary inci-
dental material.

"(2) If the contract between the person providing
the services and the person receiving them contains
separate amounts applicable to the performance of
the services and the furnishing of the material then
the above Section shall not apply, and the person
furnishing the materials shall be liable for the
limited sales tax upon the agreed price of the mater-
ials as thus set forth in the contract. Provided,
however, that the agreed price of the materials
shall be not less than the actual cost of such mater-
ials to the person so providing them.

"(3) In any case where the person so providing
such materials has paid the limited sales tax to his

> supplier when purchasing the tangible per-
> sonal property, he shall be entitled to credit
> the tax so paid to his supplier against any
> tax imposed by this Chapter with respect to his
> subsequent sale of that tangible personal proper-
> ty."

Article 20.01 (R) also contains a reference to Article 20.01 (T):

> "'Use' includes the exercise of any right or
> power over tangible personal property incident
> to the ownership of that tangible personal proper-
> ty except that it does not include the sale of
> that tangible personal property in the regular
> course of business. 'Use' specifically includes
> the incorporation of tangible personal property
> into real estate or into improvements upon real
> estate without regard to the fact that such real
> estate and improvement may be subsequently sold
> as such except as provided in Article 20.01(T)(2)."

Clearly, where the contract consists of a contract contain-
ing a lump sum price covering both the performance of the services
and the furnishing of necessary material then the contractor, i.e.,
the electric company, would be deemed the consumer of such material
and there would be no sale of tangible personal property as to the
transaction of incorporating the material into the real estate be-
longing to the customer. However, Contract A contains separate
amounts applicable to the performance of the services and the fur-
nishing of the materials. Consequently, it may be argued that un-
der Section 2 of Article 20.01(T) the person furnishing the mater-
ials, i.e., the contractor, would be liable for the limited sales
tax upon the agreed price of the materials as set forth in the con-
tract. But the contractor cannot be subject to the use tax inas-
much as the term "use" will not include the incorporation of such
tangible personal property into real estate by virtue of the statu-
tory language in Article 20.01(R) as specifically related to Arti-
cle 20.01(T)(2). However, the Sales Tax Act is silent as to which
transaction the limited sales tax attaches. Is the taxable trans-
action in 20.01(T)(2) referring to the purchase of the materials
by the contractor, or is it referring to the incorporation of the
materials by the contractor into the real property? If it is refer-
ring to the purchase of the materials by the contractor, then the
transaction subject to the tax will be the same for both a lump sum
contractor and a separated contractor. But the tax base for the

purpose of computation may be different inasmuch as the computation for the lump sum contractor shall be made upon the actual cost of the materials to the contractor while the tax base for the separated contractor shall be the agreed price of the materials as set forth in the contract so long as it is not less than the actual cost of the materials to the contractor. Consequently, if a separated contractor agrees to a price of materials furnished by him which is higher than his actual cost, then the contract price will be the basis for the computation of the tax. However, if the transaction to be taxed under a separated contract is not the purchase of the materials by the contractor but the incorporation of the materials by the contractor into realty, then the separated contractor would be paying a tax based on one transaction, i.e., incorporation of materials into realty, and a lump sum contractor would be paying a tax based on a different transaction, i.e., purchase of materials before incorporation. Inasmuch as the statute is not clear as to which transaction shall be the subject matter of the tax then we must resort to prior interpretation by the Comptroller and to the rules of statutory construction.

The Comptroller by Ruling No. 9 (95-0.09) provides:

> "A contract may recite the charges for skill and labor separately from the charges for materials for the purpose of causing the customer to be the ultimate consumer of the material."

Ruling No. 2 (95-0.02) provides that the contractor should give a resale certificate to his supplier and accept the tax from his customer upon the agreed price of the materials or accept an exemption certificate in lieu of the tax should his customer be an exempt organization. The effect of such ruling is to remove the contractor as a consumer from the transaction so that the furnishing of the materials is directly to the customer. The customer is considered the ultimate consumer of the materials and the person subject to the tax. It is worthy to note that the Comptroller did not rule that there were two transactions, i.e., the purchase of materials by the contractor and the sale of the materials by the contractor to the customer. The effect of the ruling is merely to deem that under a separated contract, the customer, not the contractor, is the consumer. The Comptroller apparently construed the purpose of 20.01(T) as that of allowing a contractor to perform work for an exempt organization without incurring a tax on the materials used in the performance of a contract. Consequently, we have been unable to find a clear decisive administrative interpretation that the Legislature intended a statutory "sale" to

occur by virtue of incorporating tangible personal property into real property. We note that the Sales Tax Act had been amended in 1963 and 1967 with no substantial change in Article 20.01(T). We cannot assume that there has been a legislative re-enactment of any administrative policy to the effect that the incorporation of tangible personal property into realty is a statutory sale. Do the rules of statutory construction suggest such interpretation?

We hold that they do not. It is fundamental in construing tax statutes that they be given a construction in harmony with the Constitution of the state and federal governments. They may not be interpreted to deprive a person of property without due process of law. Article I, Section 16 of the Constitution of Texas and the fifth amendment to the Constitution of the United States require that taxing statutes be certain and definite in their scope and standard and the classification of the subjects of taxation be clear, definite, and reasonable and free from any discrimination. They are required to be interpreted "fairly for the government and justly for the citizen." 54 Tex.Jur.2d 165, Taxation, Sec. 41. Article VIII, Section 1, Tex.Const. requires that "Taxation shall be equal and uniform." It prevents any substantial discrimination while requiring all classifications to be reasonable and all tax enactments to operate equally within the class. 54 Tex.Jur.2d 147-50, 152, Taxation, Secs. 29, 31. Tax discrimination results in a violation of the constitutional requirement of equal protection of the law. 54 Tex.Jur.2d 144-145, Taxation, Sec. 26. No court will adopt a construction that results in discriminatory taxation. Western Public Service Co. v. Meharg, 116 Tex. 193, 292 S.W. 168 (1927); 54 Tex.Jur.2d 167, Taxation, Sec. 41.

It is settled that "where the legislative intent is ambiguous or obscure, a rule of strict construction is applied against the state and of liberal construction in favor of taxpayers. . . ." Also ". . . in construing statutory provisions delegating a power to tax, every reasonable doubt is resolved in favor of the taxpayer, both as to whether a power to tax was ever granted and whether the conditions attached to its exercise were ever performed. Nor will any exercise of a taxing power be extended by implication to embrace persons or property not plainly within the levy." 54 Tex.Jur.2d 166-67, Taxation, Sec. 41.

Applying these principles, we have concluded that Article 20.01(T)(2) fails to contain such clear and definite language as would require the act of incorporating materials into realty to be deemed a taxable event. This being so, we are required by the rules of strict construction to hold that such is not a taxable

event. Furthermore, the interpretation of Article 20.01(T)(2) in such a manner as to treat contractors who perform under prior lump sum contracts as being exempt from the tax and not falling within the taxing act, but to treat contractors who have performed pursuant to a prior separated contract as not being exempt and falling within the taxing act, would be treating two similarly situated persons in a different manner. This inconsistent treatment would be a violation of due process and the equal protection clause of both the United States and Texas Constitutions. Group No. 1 Oil Corp. v. Sheppard, 89 S.W.2d 1021, 1023 (Tex.Civ.App. 1935, error ref.); Calvert v. McLemore, 163 Tex. 562, 358 S.W.2d 551 (1962). We do not think that the statutes compel such an interpretation, and under the applicable canons of statutory construction, we cannot give it such interpretation. As related to contracts entered into before September 1, 1961, we believe that if Article 20.01(T) is interpreted to require a different result for the lump sum contractor than for the separate contractor, we would be allowing mere form to prevail over substance. This would amount to tax discrimination and unequal treatment. It would also be subject to attack on the basis of producing a retroactive application, since the article does not provide a fixed standard of duty so as to give the contracting parties an opportunity to comply with the permitted options.

Recently, an analogous situation was disposed of which involved the construction and application of the Minnesota sales and use tax. Attorney General's Opinion (Minn. July 27, 1967), P-H State & Local Tax Serv., para. 23, 505. There, as here, the problem concerned construction contractors who had entered into an enforceable construction contract unconditionally vesting the rights and obligations of the parties thereto and making no provisions for allocation of future taxes prior to the enactment date of the tax law. However, some of the purchases which had been made pursuant thereto were not consummated until after the effective date of the tax law, which imposed the tax upon sales made in the state after the date of the enactment of the law. Minnesota had adopted the common law and had incorporated into its statutes the rule of a presumption against a retroactive effect. The Minnesota Attorney General, faced with such a presumption and in the absence of any expressed legislative intent in the statute to impose taxes retroactively on such a voluntary transaction as a lump sum, cost plus, or time and material contract, with a guaranteed price, held that the purchases or sales made pursuant to the enforceable contract executed before the tax enactment but completed afterwards were non-taxable transactions.

In the course of the opinion, the Attorney General took notice that such retroactive imposition of taxes based upon such a voluntary act is held invalid as a denial of constitutional due process and observed that the courts will afford protection from such retroactive sales taxation. The case of the State v. Industrial Tool & Die Works, Inc., 220 Minn. 591, 21 N.W.2d 31 (1945) was cited in support thereof, wherein the court distinguished a retroactive non-profits tax from a tax on voluntary acts, quoting from Welch v. Henry, 305 U.S. 134, 147, 59 S.Ct. 121,125-26 (1938), as follows:

> "'In the cases in which this Court has held invalid the taxation of gifts made and completely vested before the enactment of the taxing statute decision was rested on the ground that the nature or amount of the tax could not reasonably have been anticipated by the taxpayer at the time the particular voluntary act which the statute later made the taxable event. Nichols v. Coolidge, 274 U.S. 531, 542; 47 S.Ct. 710, 713. . . . Since, in each of these cases, the donor might freely have chosen to give or not to give, the taxation, after the choice was made, of a gift which he might well have refrained from making had he anticipated the tax, was thought to be so arbitrary and oppressive as to be a denial of due process. But there are other forms of taxation whose retroactive imposition cannot be said to be similarly offensive because their incidence is not on the voluntary act of the taxpayer.'" (Italics omitted.)

Article 20.02, Taxation-General, Vernon's Civil Statutes, merely provides:

> "There is hereby imposed a limited sales tax at the rate of two per cent (2%) on the receipts from the sales at retail of all tangible personal property within this State."

There is nothing in the statute from which an intent may be inferred to impose taxes retroactively on such a construction contract entered into prior to the effective date of such taxing statute. The construction contracts in question herein constitute the kinds of "voluntary acts" which the Minnesota Attorney General concluded from the cited authorities would be protected

by the courts from retroactive sales taxation. Here the parties merely chose at the time of the contract to separate the cost of materials from the labor rather than to price them together. Had the Telephone Company chosen the latter course, its tax liability would not be in question. To permit the statute to be construed so as to impose taxes based on the mere form of a contract entered into prior to the taxing statute would be to allow the taxing incidence to fall upon the voluntary act of the taxpayer occurring prior to the passage of the taxing statute. Hence the incidence of the tax would operate in the prohibited retroactive manner.

Texas has adopted the common law, and it also follows the rule of presumption against retrospective application of statutes. 53 Tex.Jur.2d 49-53, Statutes, Sec. 28. In addition, Article I, Section 16, Tex.Const., expressly provides that "No . . . retroactive law . . . shall be made." It also applies to the levy or imposition of taxes. Castleberry v. Coffee, 272 S.W. 767 (Tex. Comm.App. 1925).

Consequently, we must conclude that constitutional considerations compel an interpretation of Article 20.01(T) in such a manner that the prior lump sum contractor will not be treated differently from the prior separated contractor; and construing the statute in the light of the constitutional requirements, we hold that the transaction of delivery and incorporation of the materials into real property pursuant to the contract entered into prior to the enactment of the law in question was non-taxable and did not constitute a sale of tangible personal property occurring after the statute became operative and effective. After the tax law became effective, the parties are, of course, free to contract that the liability for the tax upon the transaction is incurred by the contractor if he is a lump sum contractor or by his customer if he is a separated contractor, and the tax base will be the costs of the materials to each. The cost of materials to the lump sum contractor is what he pays for the materials, and the cost of the materials to the separated contractor's customer is the cost as provided in the separated contract if that amount is equal to or greater than the actual value. The effect of Article 20.01(T) (2) then is to authorize a transfer of liability from the contractor to his customer so that if the customer is an exempt organization he may claim the exemption in lieu of paying the tax on the materials. We do not perceive that the Legislature intended a tax to be levied upon the act of incorporating materials into the realty by a separated contractor and no tax to be levied upon the

same act done by a lump sum contractor.

This interpretation, therefore, is consistent with and allows the enforcement of Attorney General's Opinion No. C-30 (1963), from which we quote, in part, at page 5 as follows:

> "We believe that the purpose of the provision
> mentioned (Article 20.04(H), Vernon's Civil
> Statutes) was to make provisions for such per-
> sons as contractors who have entered into con-
> struction contracts based upon the fact that the
> contractor could purchase certain materials at
> certain prices without a tax on the sale of the
> materials and he agrees to perform the contract
> for a certain amount. If a contractor should be
> required to pay a tax on the material, then he
> would suffer a loss in performing his contract.
> The Legislature did not want to make a person
> who had made a bona fide contract before the
> effective date of the Act to suffer a loss on
> account of the Act."

By that opinion this office ruled that the purchase of materials by a contractor to perform his obligations under a contract entered into prior to September 1, 1961, would be exempt from the tax under Article 20.04(H). At that time the Attorney General made no distinction between lump sum contractors and separated contractors for the purpose of exemption. We see no reason to make such a distinction at this time. This conclusion is also consistent with Attorney General's Opinion No. WW-1435 (1962), which held that developers and builders were selling real property and not tangible personal property and that regardless of the form of their contract they could not be held to be reselling the materials purchased by them.

This is also consistent with Attorney General's Letter Opinion dated November 24, 1961, which held in reference to the prior contract provision that there could be no distinction between prior contracts whether they were lump sum or a cost-plus contract (a cost-plus contract generally contains separate amounts applicable to the cost of materials and the cost of services and are considered separated contracts).

The only remaining question concerning Contract A is the provision that:

"Title to said material shall pass to the
Telephone Company upon shipment thereof from
factory to storerooms consigned to the Tele-
phone Company or to the installer of the Elec-
tric Company in care of the Telephone Company.
The Telephone Company shall thereafter be sole-
ly responsible for loss or damage, including
the value of installation work performed, result-
ing from fire or any other cause whatsoever."

Article 20.01(K)(1) provides that:

"'Sale' means and includes any transfer of
title or possession or segregation in contem-
plation of transfer of title or possession, ex-
change, barter, lease or rental, conditional or
otherwise, in any manner or by any means whatso-
ever, of tangible personal property for a consider-
ation."

The issue presented by this clause was whether or not the trans-
fer of title prior to installation by the contractor is in and
of itself a sale of tangible personal property. We understand
that there was no transfer of possession to the Telephone Com-
pany but that the equipment and materials involved stayed in
the sole possession of the contractor-electric company during
the entire period of time until completely installed; that the
arrangement was for a "turn-key" job whereby the taxpayer did
not accept the goods until they were completely installed and
in good working order; and further, that the parties did not in-
tend that this provision be an unconditional transfer of owner-
ship of the materials involved but meant that it would be a desig-
nation of ownership to determine the responsibility for the goods
should loss from unavoidable acts ensue. That is, upon the hap-
pening of certain conditions, i.e., loss, or damage, the Tele-
phone Company was to be responsible and bear such loss.

In determining tax liability it is fundamental that sub-
stance, rather than the form of the transaction govern. 84 C.J.S.
165, Taxation, Sec. 62; 51 Am.Jur. 43, Taxation, Sec. 10. Ac-
tualities and consequences of a commercial transaction, rather
than the method employed in doing business, are controlling facts
in determining such liability.

"The refinements or technicalities of contracts
and conveyances are not the true diagnostics of

> taxability of a transfer. It is more ef-
> ficient to put in contrast on the one side
> the substance and practical effect of what
> was actually done, and on the other the im-
> port and design of the terms of the taxing
> statute." Bank of New York v. Kelly, 38 A.2d
> 899, 901 (N.J. Prerog.Ct. 1944).

For instance when the contract provided that title passed upon delivery to the job site of an exempt entity, the courts have construed such contract provisions as not constituting a sale:

> "The circumstance that the title to the lum-
> ber passed to the Government on delivery does
> not obligate it to the contractor's vendor
> under a cost plus contract more than under a
> lump sum contract." Alabama v. King and Boozer,
> 314 U.S. 1, 13 (1941).

The court in that case refused to allow the government's immunity from tax to attach to the contractor's purchase of materials for the performance of a cost-plus contract with the government even though title to the goods passed to the government upon delivery.

> "The Government may look at actualities and
> upon determination that the form employed for
> doing business or carrying out the challenged
> tax event is unreal or a sham may sustain or
> disregard the effect of the fiction as best
> serves the purposes of the tax statute. To
> hold otherwise would permit the schemes of tax-
> payers to supersede the legislation and the
> determination of the time and the manner of tax-
> ation." Higgins v. Smith, 308 U.S. 473, 477
> (1939).

Consequently, it is not the contract which constitutes a sale but the performance of the contract which is the taxable event. It is not what the parties agreed to do, it is what the parties actually do that the tax must be levied upon. It would be strange indeed that we could take the position that this contractual provision was not sufficient upon which to constitute a sale between

the contractor and the federal government for the purposes of tax immunity and then in another transaction say that the provision is sufficient to constitute a sale between a contractor and his customer for the purposes of levying a tax. The contractual provision is either a sale or it is not a sale, and if it is not a sale for the purpose of granting tax immunity it is clearly not a sale for the purpose of imposing the tax. Consequently, we must hold that in absence of some other act or some other performance, such as a transfer of possession or the exercise by the customer of an incident of ownership over the property which was the subject matter of the contract, no tax will incur merely by virtue of the contractual provision designating the party to be responsible for loss or damage.

In the view and disposition we have taken in this Opinion, we do not reach the question of whether the transaction falls within the exemption provisions of Article 20.04(H), Taxation-General, Vernon's Civil Statutes. We observe that this Article makes no distinction as to whether title passed prior to incorporation into realty or after such incorporation. Likewise, it makes no distinction as to a lump sum or a separated contractor. It may well be that the original supplier or seller of the materials sold them to the taxpayer's contractor in contemplation of the contract and transaction in question, and that the taxpayer, as the third party, is thus exempt from tax under Article 20.04(H) because the property is being "used" to perform the prior contract. However, we have no such facts before us, and we cannot assume that this is so. The original supplier or seller may have sold the materials to the contractor long before the contract was contemplated, and the contractor already carried a sufficient stock of materials to fill the contract at the time of its contemplation. If so, the taxpayer might not be entitled to claim tax exemption under Article 20.04(H) in view of the holding in Calvert v. British-American Oil Producing Co., 397 S.W.2d 839 (Tex.Sup. 1966) which dealt exclusively with computer machines (which were categorized as tangible personal property) rather than dealing with the apparent real property question here presented. In that case, the court held that Article 20.04(H) contemplates for tax exemption a written contract between the purchaser and a third party and not between the seller and the purchaser. We, therefore, will not pass upon whether the taxpayer's transaction falls within the exemption provisions of Article 20.04(H).

## Contract B

The next contract, Contract B, covers the purchase of telephone directories. We understand that these telephone directories

were purchased by the taxpayer for the purpose of distributing the same to its customers in the areas that it served. All purchases involved were made after September 1, 1961, and were made pursuant to contracts entered into prior to September 1, 1961. The issue presented by this contract is whether or not the telephone directories were used to perform a contract entered into prior to September 1, 1961. The title and possession of the telephone directories passed to the taxpayer after September 1, 1961. Consequently, the taxpayer is the person who must show that these were used to perform a prior contract. The contract that he must show and that he is required to perform is that one between the purchaser and a third party. This contract was not submitted with the opinion request and we further understand that notice of such contract was not filed with the Comptroller within 120 days from the effective date of the Act as required by Article 20.04(H). Consequently, we must conclude that the facts as presented to us in the opinion request are insufficient upon which to base an exemption and in view of the fact that all the provisions of exemption have not been met.

## Contracts C & D

Contract C covers the purchase of office supplies, office furniture and equipment and Contract D covers the purchase of electronic data processing equipment. The purchase of these materials was identical with the question presented to the Texas Supreme Court in the case of Calvert v. British-American Oil Producing Company, 397 S.W.2d 839 (1966), in which the court held that such purchases were taxable absent a showing that the purchaser used the property to perform a written contract entered into prior to September 1, 1961. The facts are identical here and thus we must reach the same result and we conclude that the tax on these items was properly levied.

## Contract E

Contract E provides for the joint use by the Telephone Company and other utility companies of wooden poles, wherein other utility companies are allowed to attach lines and devices to the Telephone Company's poles, and the Telephone Company is allowed to attach its lines and devices to the utility companies' poles. The parties jointly call this arrangement a pole-rental. The Sales Tax Act does not define the word "rental." However, clearly, there must be more than the denomination by the parties that such a transaction be a rental. There must be a transfer of possession or dominion plus a license in the transferee to

use the property in order to constitute a rental. A license
to use without a concurrent transfer of possession or dominion
does not constitute a rental. As we understand the control and
possession of these poles remain with the respective owners of
the poles with merely the license to use by the other company.
We must conclude, therefore, that without a transfer of possess-
ion there can be no rental and thus no taxable event. However,
should it be shown that the control or the possession of the
poles be transferred, then the question must arise as to whether
the poles are tangible personal property. The Texas Courts ap-
parently treat utility poles as real property, Keating Implement
and Machine Co. v. Marshall Electric Light and Power Co., 74 Tex.
605 (1889); Reynolds v. McLemore, 241 S.W. 606 (Tex.Civ.App.1922,
no writ); Ward County Irrigation District No. 1 v. Western Union
Telegraph Co., 254 S.W. 1114 (Tex.Civ.App. 1923, no writ). In
the Keating case the court held that a lien on personal property
does not cover poles, wires and attachments located on public ease-
ments. In the Reynolds v. McLemore case, the court held that tele-
phone lines and wires were a permanent fixture and a fee interest.
In the Ward County case, the court held that the taxing authority
had the power to tax and enforce a real property lien upon tele-
graph lines and poles. In all three cases the court rejected the
argument that the poles and lines were personal property. Conse-
quently, we must conclude that if there was in fact a rental of
the poles that such would not be a rental of tangible personal
property but would be a rental of real property and not subject to
the Texas Limited Sales, Excise and Use Tax Act.

## V.

The next question asked concerns the purchase of electricity
for the use in transmitting telephone messages and operating tele-
phone equipment and whether this electricity was exempt from the
tax prior and subsequent to July 1, 1963.

Prior to July 1, 1963, the exemption found in Article 20.04(Q),
Taxation-General, Vernon's Civil Statutes, provided:

> "There are exempted from the taxes imposed by
> this Chapter the sale, production, distribu-
> tion, lease or rental of and the storage, use
> or other consumption in this State of gas and
> electricity when used in industrial, manufactur-
> ing, mining, agricultural, dairy or poultry
> operations or pumping water for irrigation or

for electrical processes such as electro-
plating and electrolysis."

The issue raised is whether this electricity was used in an
industrial operation or a manufacturing operation. With regard
to the latter, we cannot conclude that the Telephone Company is
manufacturing or processing tangible personal property. Even
though electricity is considered tangible personal property and
the message transmitted to some extent processes the electricity,
we feel that the overall transaction is that of a service render-
ed by a telephone company. We feel that this was the legislative
intent in Article 20.04(B)(4) which provided:

"There are exempted from the taxes imposed
by this Chapter the receipts from the sale,
production, distribution, lease or rental of
and the storage, use or other consumption in
this State of telephone and telegraph service."

The function of the telephone company is to render a service
and not to manufacture messages or process electricity. The
sole question then is whether the use of electricity by the tele-
phone company is an industrial use. The courts of Texas have con-
strued "industrial" not as a technical term but as a term to be
construed in its plain and ordinary acceptance. Calvert v. Austin
Laundry and Dry Cleaning, 365 S.W.2d 232 (Tex.Civ.App. 1963, error
ref., n.r.e.). In this respect the sales of electricity used to
propel street cars or used to pump water for municipal water works
have not been deemed to be sales to "industrial" consumers. State
v. Smith, 11 S.W.2d 513 (Mo.Sup. 1938). Inasmuch as exemptions
are strictly construed we cannot readily conclude that the plain
meaning of the word "industrial" demands a conclusion that the
Telephone Company is performing an industrial operation.

The 58th Legislature amended Article 20.04, by an Act that
became effective on July 1, 1963. This amendment, by subsection
(Q), exempts all electricity from the sales tax, except when sold
for residential or commercial use, and defined commercial use as
follows:

"For the purpose of this Subsection the terms
'residential use' and 'commercial use' shall
have the following meanings: . . . 'Commercial
use' means use by persons engaged in selling,
warehousing, or distributing a commodity or
service either professional or personal."

We conclude that the Telephone Company is a person engaged in distributing a service, and thus falls within the definition of commercial use. Commercial use is excepted from the exemption provision and the use by the Telephone Company of electricity to perform its operations is a taxable use.

## S U M M A R Y

### I.

A deficiency determination showing the amount of taxes, penalties and interest claimed by the Comptroller and containing a statement identifying the information upon which the additional tax assessment is based, together with attached worksheets showing the transaction upon which the Comptroller bases the determination is a valid determination, and inasmuch as the sales and use tax are complementary taxes the Comptroller is not required to elect which tax is being assessed but merely required to designate the transaction upon which the assessment is made.

### II.

Upon any transaction the Comptroller may proceed with a deficiency determination against the seller or the purchaser or both without proceeding against the other. The Limited Sales, Excise and Use Tax is a transaction tax wherein each party to the transaction is liable for the tax until the tax has been paid to the State.

### III.

The penalties and interest to be contained in the deficiency determination are computed from the last day of the month immediately following the quarter in which the transaction which gave rise to the tax occurred and not from the date of the deficiency determination.

### IV.

### Contract A

Materials used pursuant to a contract entered into prior to September 1, 1961, for incorporation

into realty after September 1, 1961, are not subject to the sales or use tax. The act of incorporation into realty is not a statutory sale.

### Contract B

In the absence of showing that the telephone directories were used to perform a written contract prior to September 1, 1961, and since notice of such contract was not given by the taxpayer to the Comptroller of Public Accounts within the 120 day period after September 1, 1961, the purchase of telephone directories cannot be held to be exempt under the provisions of Article 20.04(H).

### Contracts C & D

The purchase of office supplies, furniture and equipment and electronic data processing equipment after September 1, 1961, pursuant to contracts entered into prior to September 1, 1961, is not exempt absent a showing that such equipment was used to perform a contract written and entered into prior to September 1, 1961.

### Contract E

An agreement between a telephone company and a utility wherein each company allows the other to attach lines and devices onto each company's respective poles does not constitute a taxable transaction under the Texas Limited Sales, Excise and Use Tax Act.

### V.

A telephone company is not considered an industrial operation for the purposes of exemption of electricity purchased prior to July 1, 1963, and a telephone company is considered to be rendering a service and thus electricity sold is a commercial

use and not exempt after July 1, 1963.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Kerns B. Taylor
Assistant Attorney General
KBT:ms

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
W. V. Geppert, Co-Chairman
Nola White
John Reeves
Jack Sparks
Alvin Zimmerman

A. J. Carubbi, Jr.
Staff Legal Assistant